CITY OF HICKORY v. CATAWBA COUNTY AND BOARD OF EDUCATION OF CATAWBA COUNTY AND NEWTON GRADED SCHOOL DISTRICT v. CATAWBA COUNTY AND BOARD OF EDUCATION OF CATAWBA COUNTY.

(Filed 28 February, 1934.)

1. Appeal and Error F b—

A general exception to the judgment will not be sustained when no irregularity appears upon the face of the record.

HICKORY *v.* CATAWBA COUNTY AND SCHOOL DISTRICT *v.* CATAWBA COUNTY.

**2. Same—**

An exception to the findings of fact of the trial court will not be sustained when the exception is too indefinite to bring up for review the court's findings.

**3. Trial H b—**

An exception to the court's refusal to find certain additional facts will not be sustained where the requested findings embody conclusions of law or are adopted in substance by the court.

**4. State B b—Exceptions to rule that new governmental agency takes exclusive control of matters within its jurisdiction.**

The doctrine that where a new governmental instrumentality is established it takes control of the territory and affairs over which it is given authority to the exclusion of other governmental instrumentalities does not prevail where it is inconsistent with the organic law or with statutes subsequently enacted.

**5. Trial H b: Appeal and Error J c—**

The refusal of the trial court to find additional facts is equivalent to holding that such requested facts are not supported by the evidence, and the Supreme Court will be concluded by the facts found where the refusal to find the additional facts is correct.

**6. Schools and School Districts D a—**

The mode by which the counties of the State shall effectuate the constitutional mandate to provide for the constitutional six months term of school, Art. IX, sec. 3, is prescribed by statute.

**7. Same: Counties E b—County may assume debt of special charter districts incurred for necessary buildings without transfer of school property.**

Under the provisions of C. S., 5599, a county may include in its debt service fund in its budget the indebtedness lawfully incurred by any of its school districts, including special charter districts, in the erection and equipment of necessary school buildings, and it is not prerequisite to the assumption of such debt of special charter districts that the districts should release their charters or that the trustees of such districts should convey the school property of such district to the county board of education, the title to property in special charter districts being in the trustees of such districts, C. S., 5419, 5490(1), and Public Laws of 1933, chap. 562, sec. 4, not altering this policy, and the act of 1933 relating primarily to uniformity of taxation, Art. V, sec. 3, and not to title to the property.

**8. Same—Whether county shall assume debt of school district incurred for necessary buildings is not a matter within its discretion.**

Whether a county shall assume indebtedness incurred by its special charter school districts in the erection and equipment of school buildings necessary to the constitutional six months term is not a matter of discretion with the counties, and the courts have jurisdiction and may hear evidence as to whether the buildings in question are necessary to the constitutional term, and testimony of qualified witnesses on the question is competent.

**9. Mandamus A a—Fact that official would be guilty of misdemeanor will not preclude mandamus where punishment would not provide remedy.**

Mandamus will lie in favor of special charter districts of a county against the county commissioners and county board of education to compel the assumption by the county of indebtedness incurred by the districts for the erection and equipment of school buildings necessary to the constitutional school term, the defendants being public agencies charged by statute with the performance of the act, and the fact that the Constitution provides that county commissioners failing to perform their duties in regard to the maintenance of the required school term should be guilty of misdemeanor, Art. IX, sec. 3, does not preclude the writ, since the punishment of defendants would not provide plaintiffs the relief to which they are entitled.

APPEAL by defendants from *Hill, Special Judge,* at July Special Term, 1933, of CATAWBA.

The two actions were consolidated and tried together. The plaintiff in each case applied for a writ of mandamus to compel the defendants to assume payment of the school building and equipment indebtedness of the respective plaintiffs and to compel the defendant Catawba County to levy an *ad valorem* tax on the taxable property of the county to pay such indebtedness, with the interest thereon, as it becomes due and payable.

Pleadings were filed, a jury trial was waived, and upon the evidence introduced the court found the following facts:

1. The defendant, Catawba County, acting under Art. IX, sec. 3, of the Constitution of North Carolina, providing that "each county shall be divided into a convenient number of districts in which one or more public schools shall be maintained at least six months in every year," and section 5467 of the Consolidated Statutes of North Carolina, providing that "school buildings, properly lighted and equipped are necessary in the maintenance of a six months school term," from time to time and in school districts established throughout the county other than special charter districts, erected and equipped numerous public school buildings at a cost in excess of five hundred thousand dollars, which was and is represented by bonded and other indebtedness of the county and which is being paid through county-wide taxation.

2. At the time these consolidated actions were instituted and for some years prior thereto, the public schools of the city of Hickory were operated by a board of trustees of Hickory Special Charter School District, the boundaries of such district including all territory within and some territory without the corporate limits of the city of Hickory; and the plaintiff, Newton Graded School District, was and had been operating as a special charter school district its boundaries including territory

without as well as all territory within the corporate limits of the city of Newton.

3. Subsequent to the creation of said special charter districts and for the purpose of erecting and equipping public school buildings therein for the constitutional six months term, the defendant county of Catawba having failed to provide such buildings, the plaintiff city of Hickory from time to time issued and sold its municipal school bonds and from the proceeds thereof erected and equipped two public school buildings for colored children and four public school buildings for white children in said district, and its coplaintiff from time to time and for a similar purpose in Newton Graded School District issued and sold its school bonds and from the proceeds of such sales erected and equipped one public school building for colored children and two public school buildings for white children in said latter named district. A considerable portion of the indebtedness created by said bond issues has been liquidated by the collection of a tax levied in said districts for the purpose, and of said issues there are now outstanding and yet to mature bonds against the city of Hickory in the principal sum of $267,000, and against the Newton Graded School District in the principal sum of $64,000.

4. In addition to the aforesaid two special charter districts there were also established in said county of Catawba five other special charter districts, to wit: Catawba, Longview, Maiden, West Hickory and Conover, and said five districts, for the purpose of obtaining school buildings necessary for the six months school term issued and sold school bonds of said districts and on which there was due, at the time next hereinafter referred to, the principal sum of $179,000.

5. The defendant, Catawba County, in addition to constructing and equipping public schools in local and nonlocal tax districts throughout the county and levying a county-wide tax to pay therefor as aforesaid, on or about the ....... day of ............. , 19 . ., and pursuant to statute authorizing the board of education and county commissioners to include in debt service the indebtedness "of all districts," took over and assumed school bonds of said five special charter districts in the amount of $179,000, and said districts surrendered their special charters and conveyed their school property to the board of education of Catawba County.

6. On 3 April, 1933, the plaintiffs requested that the defendants take over and assume payment of the outstanding bonds issued by them for constructing school buildings in said districts as aforesaid; the defendant, Catawba County, acting by and through its commissioners, inquired of plaintiff if they would be willing to surrender their special charters and convey their school properties to the defendant, board of education, if the county should agree to assume said bonds, and the plaintiffs replied that they would not. The defendant Catawba County

would have assumed said bonds, and on trial of this cause, through its counsel, states that it will now assume said bonds, if the plaintiffs would agree to surrender their special charter rights and convey their school properties to the defendant, county board of education.

7. By virtue of the School Machinery Act of 1933, the said Hickory and Newton special charter districts, insofar as the operation of the public schools therein is concerned, were declared nonexistent, and the public schools of the territory formerly embraced in such districts, with those of other territory thereto added by the State School Commission, are now operated and managed by trustees of city administrative units and as a part of the State general and uniform system of public schools.

8. The Hickory and Newton special charter districts contain approximately fifty per cent of the population, as well as about one-half in valuation of all taxable property in said county, and the taxpayers of said two districts, in addition to having paid the greater portion of the indebtedness incurred by said districts in erecting and equipping public schools therein for the six months school term, and paying an annual levy of 19 cents on each $100.00 of taxable property toward liquidation of the balance of said indebtedness, have been and now are required to pay approximately one-half of the indebtedness incurred by the county in erecting schools in districts other than Hickory and Newton, as well as about one-half of the bonded indebtedness of said five special charter districts which was assumed by the county.

9. The bonds issued by plaintiffs, respectively, do not exceed or equal five per cent of the taxable property within said districts, respectively, nor do they with the school building and equipment indebtedness of the county of Catawba exceed five per cent of the taxable valuation of properties within said county.

10. The county of Catawba has not provided any school buildings in the Hickory and Newton districts for the six months school term, and those erected and equipped therein by said districts were, and are, necessary and proper for the constitutional six months school term, and those erected and equipped therein by said districts were, and are, necessary and proper for the constitutional six months school term; the buildings in said two districts, on an average, are no more expensive than those erected by the defendants throughout Catawba County.

11. These actions were instituted in April, 1933, and the plaintiffs had no knowledge of the defendants' assumption of the indebtedness of said five special charter districts until after the first Monday in September, 1931. These actions are not barred by any statute of limitations.

Upon the foregoing facts the court rendered the following judgment:

The court being of opinion that the Constitution and laws of the State impose upon the counties the mandatory duty of constructing and

maintaining public school buildings for the six months school term, and that, therefore, it is proper for, and the duty of, the county of Catawba to assume the obligations heretofore incurred by the Hickory and Newton school districts in constructing and equipping schools for the six months term; and being of further opinion that if the statute with reference to the assumption by the county of the indebtedness of all school districts is discretionary, then, under the facts in these cases, that it would constitute an abuse of discretion for the commissioners of Catawba County to assume the indebtedness of five special charter districts and exclude the Hickory and Newton districts; therefore,

It is ordered and adjudged by the court, that the defendants be, and they are hereby commanded to assume payment of the $267,000 of school building and equipment indebtedness of plaintiff, city of Hickory; that said defendants be, and they are hereby commanded and required to assume payment of the $64,000 of school building and equipment indebtedness of the plaintiff, Newton Graded School District; and the defendant, Catawba County, is hereby commanded to levy such county-wide tax upon the taxable property within the county as may be necessary to pay said indebtedness with interest as same falls due.

For the purpose of identification the bonds and indebtedness of the city of Hickory referred to above and hereby adjudged to be obligations of Catawba County are as follows:

| Amount | Issued by | Rate of Int. | Date of Issue |
|---|---|---|---|
| $  8,000 | City of Hickory | 5% | 1 June, 1916. |
| 24,000 | City of Hickory | 6% | 1 March, 1920. |
| 25,000 | Town of Highland | 6% | 1 January, 1921. |
| 210,000 | City of Hickory | 5½% | 1 January, 1924. |

It is further ordered and adjudged that the plaintiffs recover of the defendants their costs in this action to be taxed by the clerk of the Superior Court of Catawba County.

The defendants excepted and appealed upon assigned error.

*J. L. Murphy and W. C. Feimster for appellants.*
*Self, Bagby, Aiken & Patrick and G. A. Warlick, Jr., for appellees.*

ADAMS, J. The defendants entered a general exception to the judgment and to the judge's findings of fact. As to the judgment, the exception points out no specific error and we find no irregularity on the face of the record (*Dixon v. Osborne*, 201 N. C., 489); and as to the facts, the exception is too indefinite to bring up for review the findings of the

trial court. *Boyer v. Jarrell,* 180 N. C., 479; *Sturtevant v. Cotton Mills,* 171 N. C., 119; *Riddick v. Farmers' Assn.,* 132 N. C., 118.

The appellants excepted to the court's refusal to find certain additional facts, but in this respect, also, the ruling is correct. Some of the requested findings embody conclusions of law; others, in substance at least, were adopted by the court; a few are incidental to the main controversy. Those which are more relevant are based upon the following circumstances: The charter of the city of Hickory provides that all the territory within the corporate limits of the city shall constitute a public school district to be known as the "Hickory School District" and that the city council shall be charged with the duty of maintaining within the district an adequate system of public schools and of constructing and maintaining buildings suitable for this purpose. Private Laws, 1913, chap. 68, Art. 15, sec. 1. The charter of the town of Newton likewise provides that all the territory within the corporate limits and all the territory without the corporate limits and within the boundaries of the Newton Special Tax School District shall constitute a public school district to be known as "Newton Graded School District" and to be under the exclusive control of a board of trustees. Private Laws, 1907, chap. 39, sec. 104, *et seq.*

It is contended by the defendants that to these respective districts, in which taxes may be levied and for which bonds may be issued, we should apply the principle that when a new governmental instrumentality is established it takes control of the territory and affairs over which it is given authority to the exclusion of other governmental instrumentalities. We have applied this principle in holding that the extension of a public highway through a city or town, or the inclusion within the corporate limits of additional territory, does not deprive the municipality of its exclusive control over its streets. *Gunter v. Sanford,* 186 N. C., 452; *Michaux v. Rocky Mount,* 193 N. C., 550; *Pickett v. R. R.,* 200 N. C., 750; *Cf. Hailey v. Winston-Salem,* 196 N. C., 17. But the doctrine is not allowed to prevail when the governmental instrumentality, as in this case, may be inconsistent with the organic law or with statutes subsequently enacted in contravention of its purpose. The trial judge was correct in declining to approve such of the requested findings of fact as do not appear in the judgment, and his refusal was equivalent to saying that the proposed findings are not supported by the evidence. *In re Trust Co., ante,* 12. The result is that we are concluded by the facts as found by the court. *Colvard v. Dicus,* 198 N. C., 270; *In the Matter of Assessment v. R. R.,* 196 N. C., 756; *Abbitt v. Gregory,* 195 N. C., 203.

It is incumbent upon the General Assembly to authorize the levy of taxes for the support of the public schools of the State (*Greensboro v.*

*Hodgin,* 106 N. C., 182), and when this is done the duty of providing for the maintenance of public schools in a county devolves primarily upon the board of county commissioners. "Each county of the State shall be divided into a convenient number of districts, in which one or more public schools shall be maintained at least six months in every year; and if the commissioners of any county shall fail to comply with the aforesaid requirements of this section, they shall be liable to indictment." Constitution, Art. IX, sec. 3. This section is mandatory, but the mode of performance is prescribed by statute. *Elliott v. Board of Equalization,* 203 N. C., 749; *Julian v. Ward,* 198 N. C., 480. Section 5467 of the Consolidated Statutes requires the county commissioners to provide funds for school buildings which shall be lighted and equipped with suitable desks for children and with suitable tables and chairs for teachers—such as are necessary for the maintenance of schools for a term of six months. Section 5596(c) defines the debt service fund and directs its application, and section 5599 provides that the county board of education, with the approval of the board of commissioners, may include in the debt service fund in the budget the indebtedness of all districts, including special charter districts, lawfully incurred in erecting and equipping school buildings necessary for the six months school term.

Partly in consequence of the foregoing statute this Court has recently approved the assumption by a county of the payment of bonds previously issued by school districts for the purpose of building and equipping such schoolhouses as were necessary for the maintenance of schools for the constitutional period (*Maxwell v. Trust Co.,* 203 N. C., 143); and in elucidation of the proposition the Court subsequently said that there is no sound reason why a school district should be required to pay out of its own taxable property a debt which the Constitution imposes upon a county. *Reeves v. Board of Education,* 204 N. C., 74.

This is the principle underlying the present case. It is recognized by the defendants who, according to the sixth finding of the facts, are willing to assume payment of the district bonds upon surrender by the plaintiffs of their special charter rights and upon conveyance of their school property to the county board of education. This situation raises the question whether the condition imposed by the defendants is a valid defense to the plaintiffs' actions.

It will be observed that the last paragraph of section 5599 is not restricted to districts of any special character; it applies to "all districts, including special charter districts." The limitation is to indebtedness lawfully incurred in the erection and equipment of necessary buildings. The release of special charter rights is not a necessary condition precedent to the defendants' assumption of the debt.

Nor is it prerequisite to convey the school property in the affected districts to the county board of education. Under the law in force when the present actions were instituted the title to the property of special charter districts was vested in the trustees of the districts (C. S., 5419, 5472, 5490(1), and the act of 1933, of which we take judicial notice, seems to contemplate continuance of this policy. Public Laws, 1933, chap. 562, sec. 4. The determinative question involves not so much the title to property as the uniformity of taxation, and under the decisions we have cited the latter point has been resolved against the contention of the appellants. Constitution, Art. V, sec. 3. The asserted discrimination is emphasized by the fact that the board of county commissioners has assumed the payment of bonds in the sum of $179,000 issued on behalf of five special charter districts for necessary school buildings, leaving the Hickory and Newton districts with the dual burden of maintaining their own schools and materially contributing to the support of all other public schools in the county. When the indebtedness of "all the districts" lawfully incurred for the necessary buildings and equipment is taken over for payment by the county as a whole, the local districts are relieved of their annual payments. Sec. 5599.

This is not a problem to be solved by the defendants in the exercise of their discretion, or one in the solution of which the courts are shorn of jurisdiction. The exercise of jurisdiction implies the right to hear evidence on the question whether buildings and equipment of certain types are essential to the operation of the schools, and as the witnesses who testified as to these things were qualified to speak, the exceptions addressed to the admissibility of their testimony cannot be sustained. To the admission of evidence there are other exceptions which upon inspection we find to be untenable; and this is true, likewise, with respect to the appellant's exceptions to the court's refusal to strike certain allegations from each of the complaints. In denying the motion for nonsuit there was no error.

It is suggested that relief cannot be obtained by mandamus. The writ, issuing from a court of competent jurisdiction, is directed to a person, officer, corporation, or inferior court commanding the performance of a particular duty which results from the official station of the party to whom it is directed or from operation of law. It is a writ of right to which every one is entitled when it is appropriate process for enforcing a demand. *Burton v. Furman,* 115 N. C., 166; *Lowery v. School Trustees,* 140 N. C., 33. The defendants are public agencies charged with the performance of duties imposed by the Constitution and by statutes and upon their failure or refusal to discharge the required duties resort may be had to the courts to compel performance by the writ of mandamus. It is contended that the plaintiffs' remedy is by

indictment (Const., Art. IX, sec. 3) and not by mandamus. There are decisions in which the writ was denied on the ground that the complaining party had a remedy by indictment; but the weight of authority sustains the position that to supersede the remedy by mandamus a party must not only have an adequate legal remedy but one competent to afford relief on the particular subject-matter of his complaint. Punishment of the defendants would not provide the relief to which the plaintiffs are entitled. 38 C. J., 565, sec. 35; *Fremont v. Crippen,* 70 A. D., 711; *Com. ex rel. Schaffer v. Wilkins,* 19 A. L. R., 1379 and annotation. Judgment

Affirmed.