BOARD OF SCHOOL TRUSTEES OF WASHINGTON CITY ADMINISTRA-
TIVE UNIT v. J. S. BENNER, COUNTY ACCOUNTANT FOR BEAUFORT
COUNTY.

(Filed 24 February, 1943.)

**1. Schools §§ 4, 26½—**

Public Laws 1923, ch. 136, sec. 178, providing per capita allotment of county school funds between special charter districts and all other schools of the county, is no longer applicable to the present type of school administration and is supplanted by the current law. School Machinery Acts 1935, 1937, 1939 and 1941. *Held:* It is the duty of the county treasurer to apportion all county-wide current expense school funds to county and city administrative units monthly and to remit the same on a per capita enrollment basis.

**2. Schools §§ 24, 25—**

The budgets of public school administrative units are not merely tentative, informative, advisory; when prepared and approved by the successive authorities to whose consideration they are referred, these budgets become, to all intents and purposes, appropriations from available funds to be applied to the objects specifically named.

**3. Schools § 25—**

When a public school administrative unit budget is perfected by approval, the power of the various authorities instigating, adopting and approving it is *functus officio*, and neither these officials, nor any others in their stead, are clothed with the power of budgetary control, which might be invoked to modify its terms.

**4. Same—**

The law provides a measure of review where disputes arise between the proponents of the budget and those called upon to adopt or approve it, respecting its adequacy in certain respects; and doubtless budgets which violate the terms of the law might, under proper conditions, be made the subject of court review.

APPEAL by defendant from *Parker, J.,* at December Term, 1942, of BEAUFORT.

This action was brought by the plaintiff against Benner, County Accountant for Beaufort County and *ex officio* Treasurer of said county, to compel a proper distribution between Washington City Administrative Unit and the County Administrative Unit of Beaufort County of the funds collected and budgeted for debt service in said county for the years 1941 and 1942.

After appropriate pleadings had been filed, the case came on for a hearing before Parker, J., at the December Term, 1942, of Beaufort Superior Court. By consent of parties, the controversy was heard by Judge Parker without the intervention of a jury.

From the stipulation of parties made in open court and the evidence offered, the following facts were found and incorporated in the judgment:

"1. Beaufort County is a political subdivision of the State of North Carolina. The public schools of the State within Beaufort County are administered by two administrative agencies: (a) Washington City Administrative Unit, which Unit comprises the City of Washington, N. C., Washington Township, and a part of Long Acres Township; and (b) Beaufort County Board of Education. The school affairs within Beaufort County have been administered by those respective units since prior to 1933, and each unit has been recognized and dealt with by the State School Commission as a proper unit for the administration of school affairs within their respective territory.

"2. Beaufort County has no Treasurer. The defendant, J. S. Benner, is and for several years has been County Accountant of Beaufort County and *ex officio* performs the duties of County Treasurer.

"3. Each of said school administrative units has each year filed 'current expenses,' 'capital outlay,' and 'debt service' budgets on the forms furnished by the State School Commission, which budgets have been annually approved within the time required by law by the authorities charged with the duty of approving the same.

"4. The debt service budget for the Washington City Administrative Unit for the fiscal year beginning July 1, 1941, showed the service requirements of $29,305.00, and sources of income of $29,305.00, of which latter amount $8,297.63 was estimated to be paid from the County per capita levy for debt service.

"5. The State School Commission has certified that the enrollment for Beaufort County Administrative Unit is 5,628, and for Washington City Administrative Unit 3,243, the percentages being 63.44 and 36.56 for the fiscal year 1940-41. The per capita collection owing to the City Administrative Unit for said fiscal year, based on the foregoing percentages, was $8,999.62. There was paid to Washington City Administrative Unit for debt service during said year the sum of $7,393.20.

"6. The budget filed by the Washington City Administrative Unit for the fiscal year 1942-43, beginning July 1, 1942, shows debt service requirements of $28,355.00, and an estimated income of $28,355.00, of which income $4,900.00 is estimated to come from County per capita collections.

"7. During the months of July, August, September and October, 1942, the defendant, J. S. Benner, has received the sum of $7,674.11 applicable to the debt service requirements of the schools of Beaufort County, of which, based upon the per capita enrollments as certified by the State School Commission, there should have been paid to Washington City Administrative Unit $2,867.81. The defendant Benner has paid over to the said City Administrative Unit during said period the sum of $1,441.90.

"8. During the fiscal year 1941-42, Beaufort County School Administrative Unit did not expend for debt service requirements the amount estimated in the budget filed for that year and for that purpose, the amount actually expended per pupil by Beaufort County School Administrative Unit for debt service being less than the estimated expenditure and less than the actual expenditure for that purpose by Washington City Administrative Unit from county funds. After the budgets for the fiscal year, beginning July 1, 1942, had been filed and approved by the governing authorities, the defendant Benner undertook to charge against the funds to be received by Washington City Administrative Unit for debt service, the amount which it had expended for debt service during the past year on a per capita basis in excess of the amount expended for that purpose by Beaufort County Administrative Unit.

"9. During June, 1941, Washington City Administrative Unit and Beaufort County School Administrative Unit filed current expense budgets and capital outlay budgets, which were duly approved by the governing authorities.

"10. The defendant Benner, during the fiscal year 1941-42, apportioned monthly the current expense funds to County and City Administrative Units, based on enrollment as certified by the State School Commission. The City Administrative Unit actually expended more for

current expense per pupil than was expended during said year by the County per pupil.

"11. In June, 1942, each School Administrative Unit filed current expense and capital outlay budgets on forms prescribed by the State School Commission, which budgets were duly approved by the governing authorities as required by law, and has certified for the fiscal year 1941-42 the County's enrollment was 6,401 and the City's 3,222, and the respective percentages were 62.63 and 37.37.

"12. During the months of July, August, September and October, 1942, the defendant Benner has received for the current expenses of the schools of Beaufort County the sum of $9,606.86, of which based on the enrollment as certified by the State School Commission $3,590.07 was applicable to the current expenses of the schools of Washington City Administrative Unit. During said time he has only paid over to the said Washington City Administrative Unit for current expenses the sum of $960.97, contending that as the County expenditure per pupil during 1941-42 was less than the City Administrative Unit expenditure, the excess of such expenditure should be deducted from the amounts to be received by the City Administrative Unit during the fiscal year 1942-43.

"13. The defendant Benner has in hand the sum of $2,629.10, which with the amount heretofore paid would make the amount which should have been paid to the City Administrative Unit, if the Court is of the opinion that the deduction was improper, and is prepared to pay over the funds so withheld, if such withholding is not required by law."

The contentions of the parties are thus stated in the judgment:

"Plaintiff contends that under the School Machinery Act that 'all county-wide current expense school funds shall be apportioned to county and city administrative units monthly' and if the County Administrative Unit spends less per pupil than the amount estimated in its budget, that such excess expenditure within the budget by the City Administrative Unit cannot be deducted from the budget estimates for the next fiscal year. Defendant Benner contends that while he is required to distribute the funds monthly as collected, if at the end of the year the City has expended more per capita than the County has expended per capita, such excess expenditure shall be deducted or charged to estimated income from the City Unit during the next following year."

Upon the foregoing findings of fact, His Honor rendered the following judgment:

"1. It is the duty of the defendant, J. S. Benner, to pay to Washington City Administrative Unit monthly, as funds are collected for debt service for schools, its percentage of said funds as certified by the State School Commission up to, but not in excess of, its budget requirements as shown by its budget. The defendant Benner is directed to pay over

SCHOOL TRUSTEES *v.* BENNER.

to the Washington City Administrative Unit the sum of $1,425.91, which, with the amount heretofore paid over, will give to the said City Administrative Unit its per capita collections for debt service for the months of July, August, September and October, 1942, and he is directed to continue to pay to the City Administrative Unit its proper percentage of all funds collected for debt service at the end of each month until he has paid to the said City Administrative Unit its debt service requirements as shown by its budget. If there be collected for debt service on a per capita basis an excess above the budget requirements of the said City Administrative Unit, the defendant Benner will hold the same as a trust fund, applicable to the debt service requirements for the next fiscal year.

"2. The defendant Benner is directed to forthwith pay to Washington City Administrative Unit the sum of $2,629.10 for current expenses of said schools, which with the sum of $960.97 heretofore paid to said City Administrative Unit will represent its per capita of the current expense funds collected by the defendant Benner during the months of July, August, September and October, 1942, and he will forthwith pay to the said City Administrative Unit its per capita of the current expense funds collected for the month of November as determined by the school enrollment certified by the State School Commission. He will hereafter continue to pay to the Washington City Administrative Unit during this fiscal year 37.37% of all current expense school funds collected by him, said payments to be made at the end of each month for the collections made during said month, and said payments will continue to be made even though they may exceed the estimated revenue shown in the budget of Washington School Administrative Unit as income for said purpose, but the said City Administrative Unit will not expend said funds beyond its budget estimates, except as may be authorized or provided by law.

R. HUNT PARKER,
*Judge Presiding."*

The defendant objected and excepted to the judgment, and appealed, assigning error.

*Rodman & Rodman for plaintiff, appellee.*
*E. A. Daniel for defendant, appellant.*

SEAWELL, J. The defendant does not question that the budgets with which this review is concerned were made and approved in strict conformity with the law. He does challenge their conclusiveness as instruments for the control of expenditures referred to their authority. Under the circumstances of this case, it is argued that the budget must yield to what defense counsel regards as a superior principle of law: The

"equality" and "equity" which would confine disbursements for current expense within the city administrative unit to the per capita outlay experienced in the county administrative unit.

As far as the argument discloses, the defendant bases his action in withholding from the plaintiff the funds allocated in the 1942-43 budget almost altogether on chapter 136, section 178, Public Laws of 1923, which he quotes as follows:

"The County Board of Education shall allow for current expense, except as otherwise provided herein, the same per capita amount per pupil enrolled for the previous school year to the special charter districts that is allowed to all other schools of the County." . . . "The County Board of Education shall allow for capital outlay the same per capita amount per pupil enrolled for the previous school year to the special charter district that is allowed to all other schools." . . . "Said Board shall allow for the debt service fund the same per capita amount per pupil enrolled for the previous school year to the special charter district and districts voting bonds or borrowing from the County Board of Education for said building purposes that is allowed to all other schools of the County: provided, the amount allowed for any year shall not exceed the actual debt service need of said school district in any year."

To determine what parts of the 1923 School Code now stand unrepealed would doubtless require expert and studious attention, but the part of the statute quoted—if it could in any way affect the issue raised here, which is not conceded—is obviously inapplicable to the present type of school administration and is supplanted by the provisions of the current law. In 1923, and for many years afterward, the basic support of the six months school term came from county taxation—largely from property taxes, supplemented by a State-provided equalization fund. The special charter districts were not strictly regarded as part of the public school system—*Frazier v. Commissioners,* 194 N. C., 49, 38 S. E., 433—but were included in the fiat of chapter 562, Public Laws of 1933, section 4, which abolished them along with all other districts of whatsoever type for purposes of administration (*Bridges v. Charlotte,* 221 N. C., 472, 476, 20 S. E. [2d], 825), and the present type of administration was substituted. However, the principle upon which county-wide taxes were apportioned under the earlier law is fundamentally just and is preserved in the current School Machinery Act, which, after successive amendments (see Public Laws of 1935, 1937, 1939 and 1941), reads as follows:

"All county-wide current expense school funds shall be apportioned to County and City Administrative Units monthly and it shall be the duty of the County Treasurer to remit such funds monthly as collected to each Administrative Unit located in said county on a per capita enrollment

basis. County-wide expense funds shall include all funds for current expenses levied by the Board of County Commissioners in any county to cover items for current expense purposes and including also all fines, forfeitures, penalties, poll and dog tax and funds for vocational subjects. All county-wide debt service funds shall be apportioned to County and City Administrative Units at the time of collection and when available shall be expended in the same manner as are county-wide current expense school funds."

The budget, an indispensable device where governmental agencies are required to estimate the needs for public expenditure and make funds available for the objects of support, has, we think, a more important function, and a more definite authority, in financial control than the defense concedes it to have. The budgets under attack are not merely tentative, informative, advisory; when prepared and approved by the successive authorities to whose consideration they are referred, the budgets become to all intents and purposes appropriations from available funds to be applied to the objects specifically named. The "equities" and "equalities" of distribution—which the defendant strongly insists should be preserved—are determined in that forum and at that time—under legal procedure. Upon the finality of that determination, the law sets its seal and predicates the conduct of further administration, prescribing duties which are definite, ministerial and mandatory. When the budget is perfected by approval, the power of the various authorities instigating, adopting and approving it is *functus officio*—it is a task performed—and neither these officials, nor any others in their stead, are clothed with the power of budgetary control, which might be invoked to modify its terms. The budget is based on reasonably predictable factors and it has not been thought necessary in the course of administration to provide further niceties of adjustment, except that the law itself in particulars now under consideration provides that excesses over the budgetary needs shall be charged against the allotment of the succeeding year, which in itself negatives the theory advanced by the defendant.

The law elsewhere provides a measure of review where disputes have arisen between the proponents of the budget and those called upon to adopt or approve it, respecting its adequacy in certain respects; and doubtless budgets which violate the terms of the law might, under proper conditions, be made the subject of court review. But that subject is foreign to the issue in this case.

Certainly, with respect to the issue here, whether we refer decision to the authority of the budget or to the positive terms of the law, there could be no ambiguity. Under the statute above quoted, it became the duty of the defendant to apportion all county-wide current expense school

funds to the county and city administrative units monthly and to remit the same on a per capita enrollment basis.

It is not always wise for the Court to attempt a justification of a law which is clearly within the legislative privilege. It must be observed, however, that the theory of the defendant, if adopted and put into execution, would cause the utmost confusion and result in the very injustice which he seeks to avoid. The indebtedness in the Washington City Administrative Unit was incurred largely in the support of the six months school term—a duty recognized as that of the State and vicariously performed by the county. In a great many taxing districts, similar indebtedness has been taken over by the county upon that principle. *Hickory v. Catawba County,* 206 N. C., 165, 173 S. E., 56; *Reeves v. Board of Education,* 204 N. C., 74, 167 S. E., 454, where pertinent statutes are discussed.

The Washington City Administrative Unit cannot, under the law, be penalized by the withdrawal or withholding of its quota of county-wide taxes available for that purpose while the indebtedness is still a burden of that area.

The judgment is
Affirmed.