**STATE ex rel. Molly TEICHMAN, Relator,**

v.

**Robin CARNAHAN, et al., Respondents.**

No. SC 92237.

Supreme Court of Missouri, En Banc.

Jan. 17, 2012.

David G. Brown, Brown Law Office LC, Columbia, for Molly Teichman.

Jeremiah J. Morgan, Deputy State Solicitor, Attorney General Office, Jefferson City, for Robin Carnahan, et al.

## PER CURIAM.

■ Molly Teichman, as a citizen and qualified voter,[1] files a petition for permanent writs of prohibition and mandamus to prevent the Secretary of State from holding an election based on either the first or second senate apportionment plan and map signed and filed by the nonpartisan

---

1. "Legislative reapportionment is a justiciable issue upon which an aggrieved citizen whose right to vote has been impaired may resort to the courts for relief." *Armentrout v. Schooler,* 409 S.W.2d 138, 142 (Mo. banc 1966).

senate reapportionment commission.[2] Teichman alleges that the nonpartisan reapportionment commission had no express or implied constitutional authority to file a revised plan and map even though it was concerned that its original plan and map filed with the Secretary of State was constitutionally invalid. Therefore, she argues, this Court must look to the original plan and map to determine the constitutionality of the reapportionment. Teich-

man's primary allegation as to the original plan and map is that they are not constitutionally valid because they unnecessarily cross county lines in violation of art. III, sec. 7, of the Missouri Constitution.

The single function of this Court in this case is to determine whether the constitutional requirements and the limitations of power, as expressed in art. III, sec. 7, were followed by the nonpartisan senate reapportionment commission.[3] The consti-

2. Counsel for the respondent nonpartisan reapportionment commission filed a motion to dismiss in response to the petition pointing out that no claim for relief is requested either in mandamus or prohibition against them either individually or collectively. The point is well taken, and the motion to dismiss is sustained. Teichman's motion to amend petition is sustained.

3. The full text of art. III, sec. 7, reads:
   Within sixty days after the population of this state is reported to the President for each decennial census of the United States, and within sixty days after notification by the governor that a reapportionment has been invalidated by a court of competent jurisdiction, the state committee of each of the two political parties casting the highest vote for governor at the last preceding election shall, at a committee meeting duly called, select by a vote of the individual committee members, and thereafter submit to the governor a list of ten persons, and within thirty days thereafter the governor shall appoint a commission of ten members, five from each list, to reapportion the thirty-four senatorial districts and to establish the numbers and boundaries of said districts.
   If either of the party committees fails to submit a list within such time the governor shall appoint five members of his own choice from the party of the committee so failing to act.
   Members of the commission shall be disqualified from holding office as members of the general assembly for four years following the date of the filing by the commission of its final statement of apportionment.
   The commissioners so selected shall on the fifteenth day, excluding Sundays and holidays, after all members have been selected, meet in the capitol building and

proceed to organize by electing from their number a chairman, vice chairman and secretary and shall adopt an agenda establishing at least three hearing dates on which hearings open to the public shall be held. A copy of the agenda shall be filed with the secretary of the senate within twenty-four hours after its adoption. Executive meetings may be scheduled and held as often as the commission deems advisable.
   The commission shall reapportion the senatorial districts by dividing the population of the state by the number thirty-four and shall establish each district so that the population of that district shall, as nearly as possible, equal that figure; no county lines shall be crossed except when necessary to add sufficient population to a multi-district county or city to complete only one district which lies partly within such multi-district county or city so as to be as nearly equal as practicable in population. Any county with a population in excess of the quotient obtained by dividing the population of the state by the number thirty-four is hereby declared to be a multi-district county.
   Not later than five months after the appointment of the commission, the commission shall file with the secretary of state a tentative plan of apportionment and map of the proposed districts and during the ensuing fifteen days shall hold such public hearings as may be necessary to hear objections or testimony of interested persons.
   Not later than six months after the appointment of the commission, the commission shall file with the secretary of state a final statement of the numbers and the boundaries of the districts together with a map of the districts, and no statement shall be valid unless approved by at least seven members.

tution itself provides what must be done when a court of competent jurisdiction determines that the reapportionment is invalid.

There are compelling reasons for this Court to promptly hear and rule on cases having effect on elections in view of the short timetables involved. This is noted in our case precedents and many statutes. *Missourians to Protect the Initiative Process v. Blunt,* 799 S.W.2d 824 (Mo. banc 1990); *State ex rel. Gralike v. Walsh,* 483 S.W.2d 70 (Mo. banc 1972); *Preisler v. Doherty,* 365 Mo. 460, 284 S.W.2d 427 (1955); sections 115.535 and 115.551, RSMo 2000. The time limitations in this case, for example, provide that filing for the primary election begins on February 28, 2012, and ends on March 27, 2012. Sections 115.349(2) and 115.349(1), RSMo 2000. The petition is sustained, and a writ of prohibition directed to issue to the Secretary of State.

## Procedural History

Pursuant to art. III, secs. 2 and 7, of the Missouri Constitution, "after the population of this state is reported to the President for each decennial census of the United States," a state bipartisan reapportionment commission of citizens ("the bipartisan reapportionment commission")

must be appointed to develop new apportionment plans and maps for the Senate. Once formed, the bipartisan reapportionment commission has six months to "file with the secretary of state a final statement of the numbers and boundaries of the districts, together with a map of the districts." Mo. Const. art. III, § 7. The constitution further provides that:

> [I]f the statement is not filed within six months of the time fixed for the appointment of the commission, it shall stand discharged and the senate shall be apportioned by a commission of six members appointed from among the judges of the appellate courts of the state of Missouri by the state supreme court, a majority of whom shall sign and file its apportionment plan and map with the secretary of state within ninety days of the date of the discharge of the apportionment commission.

*Id.*

In the instant matter, the bipartisan reapportionment commission was required to file a plan and map by at least seven members with the Secretary of State by September 18, 2011. When it failed to do so, MO. CONST. art. III, § 7 provides that it is discharged and directs this Court to appoint six judges of the appellate courts, of which no more than two can be from any district[4] to sign and file an apportion-

After the statement is filed senators shall be elected according to such districts until a reapportionment is made as herein provided, except that if the statement is not filed within six months of the time fixed for the appointment of the commission, it shall stand discharged and the senate shall be apportioned by a commission of six members appointed from among the judges of the appellate courts of the state of Missouri by the state supreme court, a majority of whom shall sign and file its apportionment plan and map with the secretary of state within ninety days of the date of the discharge of the apportionment commission. Thereafter senators shall be elected accord-

ing to such districts until a reapportionment is made as herein provided.

Each member of the commission shall receive as compensation fifteen dollars a day for each day the commission is in session, but not more than one thousand dollars, and, in addition, shall be reimbursed for his actual and necessary expenses incurred while serving as a member of the commission.

No reapportionment shall be subject to the referendum.

Mo. Const. art. III, § 7.

4. The current requirement that this Court appoint six appellate judges to serve as a nonpartisan reapportionment commission was

ment map with the Secretary of State within 90 days. MO. CONST. art. III, § 7; MO. CONST. art. V, § 4.3. Accordingly, as expressly required by the state constitution, this Court appointed six appellate judges to serve on the nonpartisan reapportionment commission. *Id.*

The reapportionment of the senate districts and preparation of the map continues to be a legislative function despite the constitution's requiring appellate judges to draw the lines. Members of this Court are not appointed to perform this legislative function, no doubt because Missouri's Constitution provides that in the event a judicial challenge is made to the process, a court of competent jurisdiction is required to determine the validity of the reapportionment plan and map—this Court could not determine the validity of a map it helped draw. After appointment of the nonpartisan reapportionment commission, this Court had no further right or responsibility regarding the reapportionment process until this petition was filed.

On November 30, 2011, the nonpartisan reapportionment commission unanimously approved, signed and filed with the Secretary of State a reapportionment plan and related maps redistricting the boundaries for the Missouri Senate.

On December 9, 2011, the nonpartisan reapportionment commission purported to withdraw the plan it had submitted on November 30 and filed with the Secretary of State a "revised" (second) Senate reap-

portionment plan purporting to supersede the original one.[5] In explaining its rationale for withdrawing its original plan, the nonpartisan reapportionment commission stated that it had "opted to revise the plan upon further consideration of a constitutional provision regarding multi-district counties, even though that provision may not apply to redistricting maps drawn by the appellate judges."

The provision to which the bipartisan reapportionment commission referred, and around which this case centers, is contained in art. III, sec. 7, which states in pertinent part that:

The commission shall reapportion the senatorial districts by dividing the population of the state by the number thirty-four and shall establish each district so that the population of that district shall, as nearly as possible, equal that figure; *no county lines shall be crossed except when necessary to add sufficient population to a multi-district county or city to complete only one district which lies partly within such multi-district county or city so as to be as nearly equal as practicable in population.* Any county with a population in excess of the quotient obtained by dividing the population of the state by the number thirty-four is hereby declared to be a multi-district county.

Mo. CONST. art. III, § 7 (emphasis added).

Teichman contends that the revised reapportionment plan and related maps, that

added to the constitution in 1982. Prior to that change, the constitution required the second reapportionment commission to consist of the six commissioners of this Court. Commissioners were appointed pursuant to statute, served a term of four years subject to reappointment, and assisted the Court with disposition of the Court's cases. Sections 477.083 to 477.085, RSMo 1969. Rather than being nonpartisan, "not more than three of the commissioners shall at any time belong to the same political party." Section

477.083, RSMo 1969. The change in 1982 was necessitated by the constitutional revision to article V of the state constitution, effective in 1979, which eliminated the position of commissioner of this Court.

5. Only the Senate reapportionment plan and map is at issue in this case, and the revised materials were filed within the ninety-day period the nonpartisan reapportionment commission had to complete its duties.

was signed by four of the six commissioners and filed with the Secretary of State by the nonpartisan reapportionment commission is invalid because the commission lacked authority to withdraw its original plan in lieu of a revised plan. Teichman further argues that the first plan would otherwise remain in effect, but that, in this case, it too is invalid because it violates art. III, sec. 7, of the constitution. Specifically, Teichman asserts that the original reapportionment plan submitted by the nonpartisan reapportionment commission violated the provision that, when dividing multi-district counties or cities, only one district, at most, may cross county lines. Teichman argues the commission's original plan violated this provision because the maps for the multi-district counties of Jackson, Greene, and St. Louis were improperly drawn insofar as each impermissibly contains at least two districts crossing county lines.[6]

### Writ of Prohibition is Appropriate Procedure to Pursue Constitutional Challenge Based on Article III, § 7

■ This Court has the authority to "issue and determine original remedial writs." Mo. CONST. art. V, § 4.1. The issuance of a writ of prohibition is discretionary but this Court's precedent supports the issuance of a writ of prohibition when the actual case in controversy involves the election of public officials, there is no adequate legal remedy under time constraints applicable, and there is no time for a lower

court of competent jurisdiction to address the case. *State ex rel. Ashcroft v. Blunt,* 696 S.W.2d 329, 331 (Mo. banc 1985); Rule 84.24(e) & (j). "It is well settled that courts have jurisdiction and authority to pass upon the validity of legislative acts apportioning the state into senatorial or other election districts and declare them invalid for failure to observe nondiscretionary limitations imposed by the Constitution." *Preisler v. Hearnes,* 362 S.W.2d 552, 555 (Mo. banc 1962).

### Constitutional Violations in Crossing County Lines

■ As explained above, Teichman's principal substantive challenge is that the nonpartisan reapportionment commission's original apportionment plan violates art. III, sec. 7, of the Missouri Constitution. As previously noted, in relevant part, that provision states:

The commission shall reapportion the senatorial districts by dividing the population of the state by the number thirty-four and shall establish each district so that the population of that district shall, as nearly as possible, equal that figure; *no county lines shall be crossed except when necessary to add sufficient population to a multi-district county or city to complete only one district which lies partly within such multi-district county or city so as to be as nearly equal as practicable in population.*

---

**6.** Alternatively, Teichman argues that even if the nonpartisan reapportionment commission had authority to withdraw its first plan and submit a second, the second plan also violates art. III, sec. 7, of the Missouri Constitution, in that it too impermissibly completes multi-district areas by crossing county lines more than once. Further, Teichman suggests that the second plan submitted by the nonpartisan reapportionment commission also violates the Fourteenth Amendment to the United States

Constitution and art. I, sec. 2, of the Missouri Constitution by depriving certain voters of representation in the Senate and violates separation of powers principles based on the United States Constitution and art. II, sec. 1, of the Missouri Constitution. Because this Court holds that the nonpartisan reapportionment commission did not have the authority to submit the (second) revised plan, the Court need not address Teichman's alternative arguments.

Mo. Const. art. III, § 7 (emphasis added). The constitution expressly provides that, while the commission may generally not cross county lines when reapportioning senate districts, in dividing multi-district areas, county lines may be crossed no more than once, if necessary to complete a district that would otherwise have insufficient population to constitute its own district. This provision reflects Missouri's constitution's historical recognition of counties as important governmental units, in which people are accustomed to working together, and provided for that policy to be considered in the state Senate redistricting process. *Preisler v. Hearnes*, 362 S.W.2d 552, 557 (Mo. banc 1962).

The nonpartisan reapportionment commission's plan violated this constitutional provision by improperly dividing the district boundaries in the multi-district areas of Jackson and Greene Counties. In particular, the plan for the multi-district area of Jackson County included two districts, districts 8 (which crosses into Cass County), and 10, (which crosses into Cass and Clay Counties), which crossed county lines. Likewise, the multi-district area of Greene County was reapportioned such that both districts 20 (which crosses into Christian, Douglas, Greene, Webster, and Wright Counties) and 28 (which crosses into Barton, Cedar, Dade, Dallas, Greene, Polk, and Vernon Counties) crossed county lines.

### Commission Lacked Authority to File a Revised Plan and Map

■ Stating that it "upon further consideration of a constitutional provision regarding multi-district counties," the nonpartisan reapportionment commission purported to withdraw its initial Senate reapportionment plan and map and file a "revised" Senate reapportionment plan and map. This second plan and map did not require Jackson County or Greene County to cross two county lines to complete a district. Relators claim that the commission had no authority to withdraw their original plan and map and replace them with the revised plan and map, and that the latter is void.

■ The nonpartisan reapportionment commission is a constitutionally created commission of limited authority. In other words, it only has the authority expressly granted to it by the language of the constitution and implicitly necessary to carry out its express duties. *Thompson v. Committee on Legislative Research*, 932 S.W.2d 392, 395 (Mo. banc 1996). What is not explicitly stated in the provisions of the constitution granting the commission its power and not implicitly necessary to carry out its express duties, therefore, lies outside of its power. Article III, sec. 7, of the Missouri Constitution grants the nonpartisan reapportionment commission important but very limited authority. It states explicitly that "[the nonpartisan reapportionment commission] shall sign and file its apportionment plan and map with the secretary of state within ninety days of the date of discharge of the bipartisan reapportionment commission." *Id.* The constitution does not provide a time period for public comment on a tentative plan of apportionment and proposed map, as it does for the bipartisan reapportionment commission, nor does it otherwise provide for rehearing of the nonpartisan apportionment commission's work. Rather, it says "[t]hereafter, senators shall be elected according to such districts until a reapportionment is made as herein provided." *Id.*

In other words, once the nonpartisan reapportionment commission's reapportionment plan has been signed by a majority of the nonpartisan reapportionment commission and filed with the Secretary of State, "senators shall be elected according to such districts until a reapportionment is

made as herein provided." *Id.* The fact that the nonpartisan reapportionment commission could have taken more time prior to filing its plan and related maps does not rectify the consequence that once it did its express duty, it had no further authority.

Neither does this Court have the authority to send the matter back to the commission with directions to prepare and file a revised plan and map that comply with the constitution. Art. III, sec. 7, itself, provides an express remedy in the event that the plan is found invalid by a court of competent jurisdiction. It states that "within sixty days after notification by the governor that a reapportionment has been invalidated by a court of competent jurisdiction" the reapportionment process must be restarted. *Id.* Allowing the nonpartisan reapportionment commission to reapportion the senate districts without one of the triggering events in the constitution would be akin to allowing them plenary power to do so in direct odds with the express constitutional requirements. The matter must go back to the governor, who is directed by section 7 to notify the state political committees of a need to redraw the map and begin the process anew.[7]

Allowing the nonpartisan reapportionment commission to revise its plan and map after signing and filing it also runs afoul of the common law doctrine of *functus officio*. The Latin phrase *"functus officio"* refers to a public official or public official body being "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished." BLACK'S LAW DICTIONARY 696 (8th Ed.2004). This doctrine has been applied by Missouri courts in cases such as *State ex rel. Jones v. Atterbury,* 300 S.W.2d 806, 811 (Mo. banc 1957), in which this Court noted that once a constitutional convention, which is selected for a specific purpose, "completes its work and adjourns sine die it is functus officio in that it has fulfilled the purpose of its creation, and is therefore of no further virtue or effect." *Id.* at 811 (citation omitted).[8] In a context similar to that of the present case, the *functus officio* doctrine was invoked in an opinion of the Ohio Supreme Court to invalidate an attempted veto of a bill by the state's governor after the bill had already been filed with the secretary of state. *State ex rel. Ohio Gen. Assembly v. Brunner,* 114 Ohio St.3d 386, 872 N.E.2d 912, 932 (2007) (O'Donnell, J. concurring in judgment). The doctrine of *functus officio* was found appropriate given that "the filing of a bill with the secretary of state is the governor's performance of a constitutional obligation and the last act that the Constitution authorizes a governor to take in the process by which a bill becomes a law without his signature." *Id.*

---

7. Although, as the parties note, the maximum time limit set out in art. III, sec. 7, of the constitution would extend the process of redrawing maps beyond the time when candidates must file for office this year, the constitution does not prohibit those who are required to act to again attempt to reach agreement within the time allowed.

8. This doctrine is widely applied in jurisdictions across the nation. *See, e.g., In re Gray,* 410 B.R. 270, 275–78 (Bankr.S.D.Ohio 2009) (finding that a public official had no authority to unilaterally correct a defective mortgage document by altering and rerecording it, as *functus officio* dictated that the official had no authority after the first filing); *Williams v. Richey,* 948 A.2d 564, 567 n. 1 (D.C.2008) (explaining that, in the context of an arbitration award, "the *functus officio* doctrine holds that once an arbitrator has made and published a final award his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration") (citation omitted); *Bd. of Sch. Tr. of Washington City Admin. Unit v. Benner,* 222 N.C. 566, 24 S.E.2d 259, 262–63 (1943) (invoking the *functus officio* doctrine to prevent alteration of governmental budget after the budget had been finally approved).

## Conclusion

The original plan and map having been unanimously signed by each member of the nonpartisan reapportionment commission and filed by the commission as a body, as required by the constitution, the commission had no authority to revise the reapportionment process on its own volition even if a majority of the members of the commission recognized a constitutional infirmity in the plan and map that had been unanimously signed and filed. The original plan and map violates a clear and express constitutional limitation regarding the splitting of counties and is, therefore, invalid.

Article III, sec. 7, of the Missouri Constitution expressly contemplates reapportionment of state senatorial districts following the occurrence of either of two separate events: first, after the decennial census and, second, after the invalidation of a reapportionment by a court of competent jurisdiction. The facts necessary to analyze this case are undisputed.

Under the facts of this case, both triggering events have occurred and the process required by art. III, sec. 7, compels the legislative process to be redone in accordance with its terms. In light of the foregoing, a writ of prohibition is directed to issue to the Secretary of State prohibiting her from using the original or revised Senate plan and map submitted by the nonpartisan reapportionment commission.[9]

All concur.

9. Any post-opinion motions filed by any party must be filed by 12:00 noon, Thursday, January 19, 2012, and any response is due by 12:00 noon, Friday, January 20, 2012. This Court assumes that all those tasked with duties to reapportion the senate districts in

accordance with art. III, sec. 7, will do so in an expedited manner to provide the Secretary of State with a valid plan and map for the upcoming election. *Cf. State ex rel. Nixon v. Blunt,* 135 S.W.3d 416 (Mo. banc 2004).