(No. 57688.—)

WILLIAM C. YARGER *et al.*, Appellants, v. THE BOARD OF REGENTS OF REGENCY UNIVERSITIES *et al.*

*Opinion filed October 4, 1983.—Rehearing denied December 2, 1983.*

UNDERWOOD and CLARK, JJ., took no part.

Fred B. Moore, of Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington, for appellants.

Sue E. Myerscough of Giffin, Winning, Lindner, Newkirk, Cohen & Bodewes, P.C., of Springfield, for appellee Board of Regents of Regency Universities.

Eugene L. Resnick, Christopher A. Hansen, and Terence J. Coogan, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee Follett College Stores.

JUSTICE WARD delivered the opinion of the court:

This is a direct appeal from a judgment of the circuit court of Sangamon County holding "An Act in regard to the retail sale of merchandise by or on the property of State institutions of higher learning" (Ill. Rev. Stat. 1981, ch. 144, par. 251) (the Act) to be unconstitutional. The circuit court's ground was that the statute was not enacted according to constitutional requirements and thus was void. The direct appeal was brought under our

Rule 302(a)(1) (87 Ill. 2d R. 302(a)(1)).

On April 7, 1982, the plaintiffs, William C. and Orval J. Yarger, filed a complaint in the circuit court of Sangamon County. The first count asked that the defendant Board of Regents of Regency Universities (the Board), which operates Illinois State University in Normal, be enjoined from permitting the leasing of space on that campus for use as a bookstore. The second count requested a declaratory judgment that the proposed leasing of certain premises for use as a bookstore would be illegal. The plaintiffs are members of a partnership which owns and operates a retail store selling books and school supplies in Normal. The defendant Follett College Stores (Follett) was subsequently allowed by the circuit court to intervene as the lessee of Illinois State University. The lease was entered into on June 14, 1982, and Follett has operated a bookstore in the student center on the campus since August 17, 1982.

The Board filed a motion to dismiss on October 18, 1982, alleging the unconstitutionality of the legislative procedure under which the statute was enacted. The Board's motion, in which Follett joined, was granted by the trial court. The court determined that the Act, which became effective in 1967, had not been enacted in accordance with section 12 of article IV and section 16 of article V of the Constitution of Illinois of 1870. (Ill. Const. 1870, art. IV, sec. 12; Ill. Const. 1870, art. V, sec. 16.) The former section required, *inter alia*, that a bill had to be passed by a majority of the members elected to each house before becoming law. The latter section provided for the submission for the Governor's approval of every bill passed by the General Assembly. The court found that "[t]he enrolled bill reflecting the legislation signed by the President of the Senate and the Speaker of the House and approved by the Governor failed to include material and substantive amendments enacted by

the General Assembly and in the form submitted to the Governor for signature was not in the form enacted by the General Assembly."

The Act was introduced in the House of Representatives of the 75th General Assembly as House Bill No. 195 on January 17, 1967. As introduced, the bill provided:

"Section 1. The governing board of a State institution of higher learning may not permit or authorize a retail store carrying any line of general merchandise to be operated by that institution or to be operated on property held or leased for the use of the institution when such an operation can reasonably be expected to be in direct general competition with private retail merchants in the community. This Act does not prohibit the sale by such an institution or on such property of items commonly sold by such institutions on January 1, 1967, including but not limited to books, food, beverages and items directly connected with the operation of the institution."

The legislative history of the Act as set out in the House Journal shows the following sequence of events: the bill was taken up, read by title, and ordered printed; the bill was referred to the Committee on Higher Education; when printed, the bill was read a second time with an amendment offered by the Committee on Higher Education. The amendment struck "direct" in line 5, struck "on January 1" in line 7, struck "1967" and "directly" in line 8, inserted "research, studies or courses offered at" immediately after "with" in line 9, and struck "the operation of" also in line 9. The amendment was adopted; the bill was transcribed and typed with the adopted amendment, read a third time, and passed by a vote of 157 yeas to 5 nays. The 1967 Senate Journal shows that the bill was read at large a first time and referred to the Committee on Assignment of Bills; the bill was assigned to the Committee on Education, which recommended that the bill "do pass"; the bill was read a second time; the bill was read at large a third time and passed by a vote of 47 yeas and no nays. On April 3, 1967, a printed copy of the bill which was in its original form and did not include the amendment was approved by the Governor and signed by the Speaker of the House and the President of the Senate. In our State,

courts have allowed resort to the journals of the two branches of the legislature to show compliance or noncompliance with constitutionally mandated procedures for enacting statutes. (*Spangler v. Jacoby* (1853), 14 Ill. 297; *Neiberger v. McCullough* (1912), 253 Ill. 312; see 6 Record of Proceedings, Sixth Illinois Constitutional Convention 1386.) This is commonly referred to as the "journal entry" rule.

On July 1, 1971, our constitution of 1970 became effective. Section 8 of article IV provides, *inter alia*, that each bill that passes both houses shall be signed by the Speaker of the House and the President of the Senate "to certify that the procedural requirements for passage have been met." (Ill. Const. 1970, art. IV, sec. 8.) The quoted language, the plaintiffs say, changed our State from one following the journal-entry rule to a jurisdiction applying the "enrolled bill" rule in cases of challenged statutes. Under one version of the enrolled-bill rule, the plaintiff argues here, the signatures on the enrolled bill evidence conclusively that the statute's procedural enactment has been proper. The enactment's propriety may not be attacked by resort to the journals or any other evidence. 1 Sutherland, Statutory Construction sec. 15.03, at 410 (4th ed. 1972).

Even if it were to be assumed for sake of the plaintiffs' argument that our present constitution calls for application of the enrolled-bill rule, the statute here was considered and purportedly adopted by the General Assembly in 1967. Thus it must be examined under the journal-entry rule, which was applicable under the Constitution of 1870. See *Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, 478; *People ex rel. Hanrahan v. Caliendo* (1971), 50 Ill. 2d 72, 76-77.

Under the journal-entry rule there is a presumption that a statute signed by the presiding officers of each branch of the General Assembly and approved by the Governor was enacted in accordance with constitutional re-

quirements. (*Illinois Central R.R. Co. v. People* (1892), 143 Ill. 434.) This presumption may be overcome by clear and convincing proof that the constitutional procedure was not followed. (*Larrison v. Peoria, Atlanta & Decatur R.R. Co.* (1875), 77 Ill. 11.) T о, the journals may be employed to show noncompliance with constitutionally prescribed procedures. (*Neiberger v. McCullough* (1912), 253 Ill. 312; Cohn, *The Process of Legislation,* 1963 U. Ill. L.F. 27, 30.) As we noted, the journals do not show compliance with the constitutionally mandated procedure for enactment. To the contrary, they present clear and convincing evidence that the bill which passed both houses was not the bill which the Governor approved. The amendment by the House of Representatives was omitted. The journals do not affirmatively show that the bill was amended again so it cannot be said that the original version of the bill may have been restored. (Although not constitutionally required in this State, amendments are printed fully in the journals as a matter of course (Cohn, *The Process of Legislation,* 1963, U. Ill. L.F. 27, 30).) It is undeniable that the Act signed by the Governor did not contain the amendatory language. It cannot be presumed that the Governor would have approved the Act if the amendment had been included. (*Cf. People ex rel. Reitz v. DeWolf* (1871), 62 Ill. 253.) Further, the House of Representatives' amendment of the original bill demonstrates that the bill was unacceptable to it as originally proposed.

The plaintiffs argue that the journal entries are not to be considered conclusive for the reason that either the House or the Senate could have again amended the bill to effectively rescind the House amendment. We note, however, that had the House amendment been rescinded by the Senate prior to passage by the Senate, the bill would have to return to the House for another vote. Section 12 of article IV of the Constitution of 1870 required that the journal of each house record the vote on the final passage

of all bills. (Ill. Const. 1870, art. IV, sec. 12.) Since the House journal does not show a second vote following passage by the Senate, there exists a conclusive presumption that the Senate approved the bill as received from the House. 1 A. Sutherland, Statutory Construction sec. 15.05, at 415 (4th ed. 1972).

The plaintiffs say that there is the possibility that the House rescinded its amendment prior to voting to pass the bill and that it passed as originally proposed. Records, however, from the Secretary of State's office, which included a printed copy of House Bill No. 195 as received by the Senate on March 8, 1967, were received which show that the bill which passed the House did contain the amendment. It is clear that the amendment was not rescinded and that the bill approved by the Governor was not the bill passed by the General Assembly.

The plaintiffs argue, however, that the records of the Secretary of State should not be considered, as it has long been held that the journals are the only evidence admissible to show noncompliance with constitutional requirements for enactment of a statute. (*People ex rel. Sellers v. Brady* (1914), 262 Ill. 578.) It has been observed that "there is no way to impeach the accuracy of the journal[s]." (G. Braden and R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 153 (1969).) Here, however, no attempt has been made to impeach the accuracy of the journals by reference to the Secretary of State's records. Resort to those records was made simply to confirm that the journal entries were complete. Those records support the accuracy of the House journal by showing that the House amendment was never rescinded.

Although it has been said in a *dictum* that the journals cannot be aided or contradicted by other evidence of any kind (*Sangamon County Fair & Agricultural Association v. Stanard* (1956), 9 Ill. 2d 267), there are decisions showing that records of the Secretary of State have been exam-

ined for evidence of the journals' accuracy. The situation here is similar to that in *People ex rel. Oliver v. Knopf* (1902), 198 Ill. 340, where the enrolled bill contained a material difference from the bill which had apparently been passed by both houses of the General Assembly. There was no indication when the original bill had been changed, and the relator contended that the court should presume that the Senate, where the bill was introduced, had amended the bill to the form in which it was presented for the Governor's signature before passing it and sending it to the House. The court declined to do so, noting that the presumption that a statute became law pursuant to statutory requirements is not irrebuttable. The court observed that it had unsuccessfully sought evidence to support the relator's contention in the "documents, papers or records pertaining to the bill *** in the office of the Secretary of State." (198 Ill. 340, 347.) Too, in *Chicot County v. Davies* (1882), 40 Ark. 200, which the plaintiffs cite for the proposition that the silence of the journals as to a given matter is not conclusive that the matter did not occur unless the constitution affirmatively requires the particular matter to be printed in the journals, the court held that the records of the Secretary of State were admissible as evidence of noncompliance with mandatory provisions of the Constitution. See also 1 A. Sutherland, Statutory Construction sec. 15.07 (4th ed. 1972).

There is a basic concession by the plaintiffs in their brief: "There is no question that the Journals suggest that on February 22, 1967, an amendment was passed with language that is not contained in the Bill as it was ultimately signed by the speakers and approved by the Governor."

What this court said in *People ex rel. Dezettel v. Lueders* (1918), 283 Ill. 287, 291, is applicable:

"It requires no argument to show that if a bill were passed by both branches of the General Assembly and a different bill under the same number and title were presented to the Governor for his signature and approved by

him \*\*\* its invalidity would be established by showing the published law was not the law enacted by the General Assembly as shown by the house and senate journals."

(See also *Kostelnak v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1980), 84 Ill. App. 3d 616, 621 (Stamos, J., specially concurring).) The Governor's signature cannot infuse legal validity into a bill which was not approved by the legislature.

The plaintiffs advance *Meister v. Carbaugh* (1923), 310 Ill. 486, for the proposition that a court may decline to consider the constitutionality of the statute and urge that we do so here. The circumstances here differ significantly from those in *Meister.* There the court was asked to declare. that a statute relating to a civil service system was unconstitutional. In refusing to consider constitutionality, this court observed that when a statute has long been regarded as constitutional and that important rights have been established under it, a court may refuse to consider its constitutionality. The court noted that the statute involved had been enacted some 13 years earlier and had been acted upon since its enactment. It was noted that the statute had been amended by the General Assembly and had for a number of years constituted a part of the State's legislative policy. The constitutional defect complained of was simply that the bill and the amendment to it had not been printed before the vote was taken on its final passage. This court said that the provision was intended only to prevent surprise and the enactment of undesirable legislation and, considering that the statute had been applied without challenge for 12 years, the constitutional objection would not be considered.

For the reasons given, the judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*

UNDERWOOD and CLARK, JJ., took no part in the consideration or decision of this case.