STATE ex rel. John D. ASHCROFT,
Governor, Relator,

v.

Roy D. BLUNT, Secretary of
State, Respondent.

No. 67433.

Supreme Court of Missouri,
En Banc.

Sept. 16, 1985.

William L. Webster, Atty. Gen., Terry C. Allen, Asst. Atty. Gen., Jefferson City, for relator.

William L. Newcomb, Chief Counsel, Jefferson City, for respondent.

PER CURIAM.

This cause came on for expedited hearing and arguments September 13, 1985, on Relator's Petition in Mandamus, Respondent's Return and Relator's Reply to Respondent's Return. The operative facts are undisputed.

During the First Regular Session of the 83rd General Assembly the house passed House Committee Substitute for Senate Committee Substitute for Senate Bills 156,

14, 149, 155 and 181. This bill differed from the version passed by the senate, and a conference committee consisting of members of both houses was convened. The conference committee prepared a report in which each house receded from its position on certain points. To reflect the agreement the conference committee prepared a series of amendments for enactment by each house. Each house in turn, then, voted (1) to accept the conference committee report, and (2) to finally pass the bill as amended by the conference committee report. Action was completed on June 15, 1985, the constitutionally mandated date after which bills may not be further considered. Mo. Const. Art. III, Sec. 20.

Conference Committee Amendment No. 2, among other things, treated the Missouri Rape Statute, section 566.030, RSMo 1984 Supp., in three places. The amendment made the following changes in the house version of the bill:

(1) "Further amend said Bill, Page 1, in the Title, Line 4, by inserting after the figure '548.243' the figure '566.030.' "

This amendment called for listing section 566.030 in the title among the sections to be repealed.

(2) "Further amend said bill, Page 1, Section 1, Line 3 by inserting after the figure '548.243' the figure '566.030.' "

This amendment listed section 566.030 in the text of the bill among the sections to be repealed.

(3) "Further amend said Bill, Page 1, Section 1, Line 5 by inserting after the figure '565.065' the figure '566.030.' "

This listed section 566.030 among the sections to be reenacted. The net effect of Amendment No. 2 is to repeal section 566.-030 and then to immediately reenact it in identical language. The Court need not speculate why the legislature chose to do this rather than simply leaving the section as it is.

Following the enactment of the bill it became the duty of the clerical employees of the senate, in which the bill had originated, to prepare the authentic text of the bill for "enrolling, engrossing, and the signing in open session by officers of the respective houses...." Mo. Const., Art. III, Sec. 20(a). A fifteen day period is allowed for this purpose after which the houses may no longer consider legislation. The bill must then be presented to the governor on the same day on which it was signed.

The clerical employees prepared and caused to be printed, with the legend, "truly agreed to and finally passed," a text which carried out directions (1) and (2) of conference committee amendment No. 2, but did not carry out direction (3). This text, on its face, repealed section 566.030. The erroneous text was authenticated by the signatures of the speaker of the house and the president pro tempore of the senate and duly presented to the governor, who affixed his signature on August 8, 1985, a date within the forty-five day period allotted to him by Mo. Const. Art. III, Sec. 31. The signed bill was duly transmitted to the secretary of state for deposit and publication as required by section 2.010, RSMo 1978.

When the variance was discovered, the governor, on September 6, 1985, addressed a communication to the secretary of state enclosing a "corrected" first page of the bill and requesting its substitution. The "corrected" page purported to reflect the directions of conference committee amendment No. 2. The secretary of state, by letter dated September 10, 1985, declined to make the substitution, taking the position that he had no authority to make the requested alteration or substitution in a signed bill previously deposited with him.

On September 11, 1985, the governor filed the petition for writ of mandamus directed to the secretary of state to compel him to accept the filing and make the substitution. The secretary of state waived the issuance of an alternative writ and filed a return, admitting the operative facts as set out in the petition but claiming that he had no authority to make the alteration or substitution as requested, and suggesting that the problem could be corrected by the Revisor of Statutes.

■ Elementary principles of government show that House Committee Substitute for Senate Committee Substitute for Senate Bills 156, 14, 149, 155 and 181, 83rd General Assembly, never took effect as law. The senate and the house must agree on the exact text of any bill before they may send it to the governor. There may not be the slightest variance. The exact bill passed by the houses must be presented to and signed by the governor before it may become law (laying aside as not presently material alternative procedure by which a bill may become law without the governor's signature.) The governor has no authority to sign into law a bill which varies in any respect from the bill passed by the houses.

■ The bill passed by the houses never reached the governor. It was inadvertently modified in route.[1] No clerical employee has the authority to make any addition, deletion or modification in a bill as passed by both houses. Nor does it make any difference that the bill signed by the governor was the one signed by the speaker of the house and the president pro tempore of the senate and duly transmitted to him by the senate. The authenticating officers have no more authority than does an enrolling clerk to make any change in the bill passed by the houses. If this were not so then these officers could enact legislation by their signatures which the houses have not passed and could lay that legislation before the governor for signature.

■ The provisions of Article III, Sec. 20(a) for signing of bills in "open session" do not change the conclusion just expressed. These provisions are designed to promote accuracy and to detect errors. But legislation cannot be changed during the enrolling period, if the period for considering bills specified in section 20 has expired. The officers had authority to sign only the bill which the two houses had passed. The absence of any objection at the signing stage does not convert into legislation a law which the legislature had no power to enact. So the certification was not effective to change the bill which the houses passed.

This Court has no authority to speculate whether the governor would have signed the bill which passed the houses. The bill he signed, on its face, repealed the rape statute, section 566.030, RSMo 1984 Supp., which the legislature did not do. He signed a different bill. By the time the error was discovered, his time for acting on the bill had expired.

*State ex rel. Schmoll v. Drabelle*, 261 Mo. 515, 170 S.W. 465 (Mo. banc 1914), involved a similar problem. A bill signed by the presiding officers of both houses was sent to the governor, who affixed his signature. The House Journal listed one representative as voting both for and against the bill. Without his affirmative vote the bill would not have passed. The Court held the bill was not shown to have been constitutionally passed, and that the Court could notice the defect even though no objection had been voiced when the bill was called up for signing by the speaker. The Court issued a writ of mandamus to render the bill ineffective.

■ This is an actual controversy. The secretary of state has refused to take the action the governor requests. His refusal is understandable, for he had previously received a duly authenticated bill. When it is shown by unassailable proof, including the journals of the houses, that the bill signed by the governor was not passed by the houses, the bill is a nullity and the secretary of state has no discretion. He may not publish the bill as law. This Court may issue and determine original remedial writs. Art. V., § 4, Mo. Const.1945, as amended 1970. Issuance of a writ is discretionary and the Court exercises its discretion in favor of issuance in this case. This action involves statewide elected offi-

---

1. The Court has no occasion to consider the powers of the Legislative Research Committee to "correct all manifest clerical errors" and "supply any obvious omission or inaccuracy."

§ 3.060, RSMo 1978. The bill signed by the governor disclosed no error on its face and contained no obvious omission or inaccuracy.

cials and an act of the General Assembly; the issue is of general public interest and importance; and under the time constraints present, there is no adequate legal remedy, and no time for address to a lower court.

The bill as signed by the governor will apparently take effect on September 28, 1985, and it is appropriate for the Court to interdict the enrollment and publication of this bill, which is not law. When a proper case or controversy is presented, "It is, emphatically, the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 49, 70, 2 L.Ed. 60 (1803); *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d (1974). Such a proper case is before us.

The petition is treated as sounding in prohibition, and a writ of prohibition is made absolute to prohibit the secretary of state from enrolling and publishing any version of House Committee Substitute for Senate Committee Substitute for Senate Bills 156, 14, 149, 155 and 181, First Regular Session, 83rd General Assembly. All statutes purported to be repealed or otherwise affected by said act remain as they existed prior to the act.

All concur.