The ASSOCIATION OF TEXAS PRO-
FESSIONAL EDUCATORS, and
Carolyn Little, Appellants,

v.

W.N. KIRBY, State Commissioner of Ed-
ucation, in his Official
Capacity, Appellee.

No. C–9155.

Supreme Court of Texas.

Feb. 28, 1990.

Rehearing Overruled June 13, 1990.

Mark W. Robinett, Jefferson K. Brim, III, Austin, for appellants.

Kevin T. O'Hanson, Austin, for appellee.

## OPINION

RAY, Justice.

This is a direct appeal from a trial court judgment denying a temporary injunction in a suit challenging the constitutionality of House Bill 2566 (H.B. 2566), Seventy–First Legislature. The trial court expressly held that the "enrolled bill rule" precluded inquiry into the constitutional defects alleged by plaintiffs, even though the legislative journals and stipulated facts showed conclusively that the bill signed by the Governor had not been passed by the legislature. We hold that when the official legislative journals, testimony by the presiding officers of both houses, and stipulations of the attorney general acting in his official capacity conclusively show clerical error in the enrolled bill, an exception to the enrolled bill rule applies. We therefore reverse the judgment of the trial court and remand this cause for further proceedings.

The Association of Texas Professional Educators and Carolyn Little (collectively, the "Teachers") sued W.N. Kirby as State Commissioner of Education to enjoin the enforcement of H.B. 2566, an act amending certain provisions of the Texas Education

Code relating to the teacher career ladder system. The Teachers alleged H.B. 2566 was unconstitutional because the bill as passed by the House of Representatives and the Senate was not the bill signed by the presiding officer of each house, as required by Tex. Const. art. 3, § 38; nor was the bill as passed by both houses presented to the Governor for his approval as required by Tex. Const. art. 4, § 14. The Attorney General of the State of Texas appeared on behalf of Commissioner Kirby. The temporary injunction portion of the suit was tried on stipulated facts.[1] The factual stipulations included certified copies of the relevant portions of the legislative journals for H.B. 2566. There is nothing in the legislative records or the trial court record in any way casting any doubt as to the stipulated facts.

The House and Senate versions of H.B. 2566 differed, and the bill accordingly went to conference committee. The conference committee report produced the version of the bill that was presented to and adopted by the Senate. In particular, section 23 of the conference committee version of the bill provided:

This Act takes effect September 1, 1989, except that Section 5 takes effect September 1, 1990.

After the conference committee report was signed but before the bill was enrolled, someone crossed out the number "5" by hand in section 23 of the bill and wrote the number "7" above the crossed-out number. The Senate voted to approve the conference committee report before the clerical change. It is uncertain whether this editorial change occurred before or after the House voted on the conference committee report. The change is not dated, signed, or initialed. The enrolled bill was definitely not the version passed by the Senate.

The clerical change of the "5" to the "7" was carried forward in the enrolling process. In particular, the clerical change was included in the enrolled bill as signed by the Lieutenant Governor, Speaker of the House, and Governor. Thus the enrolled version of the bill, certified to have been as passed by the presiding officers of each house of the legislature, contained this section 23:

This Act takes effect September 1, 1989, except that Section 7 takes effect September 1, 1990.

After the Governor had signed the enrolled bill, the presiding officers and respective education committee chairpersons of each house discovered the "editorial change made in the process of enrolling the bill." They jointly wrote Commissioner Kirby urging him to enforce the Act as if the clerical error had not occurred, in order to make the Act internally consistent and to effect legislative intent.[2]

1. This court has jurisdiction over this temporary injunction appeal because both the statute and procedural rule authorize appeal of the grant or denial of "an interlocutory or permanent injunction" in those rare cases in which the constitutionality of a statute is the basis of the order and this court's direct appeal jurisdiction is invoked. See Tex.Gov't Code Ann. § 22.001(c) (Vernon 1988); Tex.R.App.P. 140(b).

2. The full text of the letter sent to Commissioner Kirby is as follows:
TEXAS HOUSE OF REPRESENTATIVES
Gibson D. (Gib) Lewis
Speaker
June 21, 1989
Dr. William Kirby
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701
Dear Dr. Kirby:
This letter concerns H.B. 2566 from the 71st Legislature, Regular Session, captioned "relating to the appraisal of and career ladder for public school teachers." As you know, the enrolled bill contains inconsistencies that bring into question the effective date of Section 7. That section changes eligibility requirements for entry into level three of the career ladder, requires the use of current year appraisals, and requires teachers to submit written applications for placement on level three.
Section 23 of the bill indicates that Section 7 takes effect September 1, 1990. However, Section 19 of the bill states that the "changes in eligibility requirements for entry into a career ladder level made by the Act, including the required use of current year appraisals, apply to all teachers beginning with the 1989–1990 school year," and Section 21 provides: "Notwithstanding any provision to the contrary, for the 1989–1990 school year an application for placement on career ladder level three must be submitted not later than December 15, 1989." (Emphasis added.) Clearly, if Section 7 doesn't take effect until September 1, 1990, the provi-

After receiving the letter, Commissioner Kirby requested a formal opinion from the Attorney General. The Attorney General issued an opinion that the Act had to be enforced as signed by the Governor because of the enrolled bill rule, and suggesting ways to reconcile the internal inconsistencies in the bill. Op.Tex.Att'y Gen. No. JM–1086 (1989).

■ The enrolled bill rule provides that the "enrolled statute," as authenticated by the presiding officers of each house, signed by the governor (or certified passed over gubernatorial veto), and deposited in the secretary of state's office, is precisely the same as and a "conclusive record" of the statute that was enacted by the legislators. *City of Houston v. Allred,* 123 Tex. 334, 347–48, 71 S.W.2d 251, 257 (1934); *Jackson v. Walker,* 121 Tex. 303, 307, 49 S.W.2d 693, 694 (1932); *Nueces County v. King,* 350 S.W.2d 385, 387 (Tex.Civ.App.—San Antonio 1961, writ ref'd); *Ellison v. Texas Liquor Control Board,* 154 S.W.2d 322, 326 (Tex.Civ.App.—Galveston 1941, writ ref'd). Under the strict enrolled bill rule, the House and Senate Journals are not more reliable records of what occurred than the enrolled bill, and no extrinsic evidence may be considered to contradict the enrolled version of the bill. *Nueces County v. King,* 350 S.W.2d at 387; *Ellison,* 154 S.W.2d at 326.

When this court last wrote concerning the enrolled bill rule, we approved a court of civil appeals opinion stating that the "statement of the rule is too broad," but that the dignity of the long-standing cases adopting it required its application to the facts of that case. *See Beckendorff v. Harris–Galveston Coastal Subsidence Dist.,* 558 S.W.2d 75, 78 (Tex.Civ.App.—Houston [14th Dist.] 1977), *writ ref'd n.r.e. per curiam,* 563 S.W.2d 239, 240 (Tex.1978) (expressly approving holding and reasoning that act was passed pursuant to constitutionally mandated procedures). With the present case we are presented with facts for which the blind application of the rule is too broad.

The enrolled bill rule is contrary to modern legal thinking, which does not favor conclusive presumptions that may produce results which do not accord with fact. 1 N. Singer, Sutherland Statutory Construction § 15.03, at 610 (1985 rev. Sands 4th ed.). While the variety of state constitutional provisions and procedures make generalization difficult, the present tendency favors giving the enrolled version only prima facie presumptive validity, and a majority of states recognize exceptions to the enrolled bill rule. *Id.,* § 15.02, at 606–607.

We agree with decisions from our sister states that an exception to the enrolled bill

---

sions of Sections 19 and 21 are meaningless as to level three entry.

An examination of the files on this bill shows that the text of the conference committee report as laid before and adopted by both houses applied the September 1, 1990, effective date to Section 5 of the bill rather than Section 7. The reference to Section 7 came about exclusively as a result of an editorial change made in the process of enrolling the bill. But for that editorial change, there would be no internal inconsistencies in the text of the bill.

In interpreting and administering the statute so as to give effect to legislative intent, these circumstances provide ample support for you to give effect September 1, 1989, to the changes made to level three by Section 7 of the bill, notwithstanding the aberrant effective date provision. In interpreting a statute, the primary object is to give effect to legislative intent (*One 1980 Pontiac v. State,* 707 S.W.2d 881, 882 (Tex. 1986); *Knight v. International Harvestor Credit Corp.,* 627 S.W.2d 382, 384 (Tex.1982)), and that intent is determined by an examination of the

bill in its entirety. (*Ex parte Pruitt,* 551 S.W.2d 706, 709 (Tex.1977); *Black v. American Bankers Insurance Co.,* 478 S.W.2d 434, 437 (Tex.1972)). See also Section 312.005, Government Code.

Although the various parties involved in passage of the legislation may have subjectively intended different results, an objective examination of the face of the bill and the history of the bill for evidence of legislative intent indicates that the law should be administered in a fashion that disregards the erroneous effective date. Sincerely,
/s/ Gib Lewis
Gibson D. "Gib" Lewis
Speaker of the House
/s/ W.P. Hobby
William P. Hobby
Lieutenant Governor
/s/ Ernestine Glossbrenner
Representative Ernestine Glossbrenner
House Public Education Committee
/s/ Carl Parker
Senator Carl Parker
Senate Education Committee

rule must exist to avoid elevating clerical error over constitutional law. Some of the analysis from the decisions of other states is instructive in formulating the exception we will recognize. Pennsylvania courts have stated that when the attorney general acting in his official capacity stipulates to the legislative facts concerning a bill, and the certified legislative records show there is no dispute that such are the facts, then the court has a duty to determine if the bill was constitutionally enacted. *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 180, 507 A.2d 323, 334 (1986); *Parker v. Commonwealth*, 115 Pa.Cmwlth. 93, 540 A.2d 313, 328 (1988), *aff'd*, 521 Pa. 531, 557 A.2d 1061 (1989) (*per curiam* order). In Illinois when the attorney general's concession in the briefs is that the legislators themselves and all legislative records concede that the bill that passed both houses was not the bill signed by the governor and certified as the enrolled version, the court must take action to declare the law was not constitutionally enacted. *Yarger v. Board of Regents*, 98 Ill.2d 259, 265–67, 74 Ill.Dec. 537, 540–41, 456 N.E.2d 39, 42–43 (1983). In Kansas the exception to the enrolled bill rule applies when the legislative journals "show affirmatively, clearly, conclusively and beyond all doubt that the bill as enrolled was not the bill passed." *Harris v. Shanahan*, 192 Kan. 183, 194, 387 P.2d 771, 782 (1963). To hold otherwise would raise form over substance, fiction over fact, and amount to government by clerical error. The Missouri Supreme Court has held the enrolled version of the bill is not constitutionally enacted when it is "inadvertently modified en route. No clerical employee has the authority to make any addition, deletion or modification in a bill as passed by both houses." *State ex rel. Ashcroft v. Blunt*, 696 S.W.2d 329, 331 (Mo.1985). We therefore recognize as a narrow exception to the enrolled bill rule

that when the official legislative journals, undisputed testimony by the presiding officers of both houses, and stipulations by the attorney general acting in his official capacity conclusively show the enrolled bill signed by the governor was not the bill passed by the legislature, the law is not constitutionally enacted. When the official legislative journals, presiding officers and attorney general all concur that the enrolled bill is not the bill passed by the legislature, the exception applies as a matter of law.

■ The Attorney General alternatively argues that the Teachers cannot be entitled to the injunctive relief they seek because of the severability rule. Although H.B. 2566 has no express severability provision, appellee argues a severability provision must statutorily be read into the bill.[3] The argument is that at most section 23 of the bill was unconstitutionally enacted, and that this unconstitutional section should be severed from the rest of the bill, which should be enforced as the law. On behalf of Commissioner Kirby, the Attorney General argues that the effective date of the bill without section 23 would be August 28, 1989, and that the difference between such date and September 1, 1989, is *de minimis*.

■ We reject this argument. The test for severability in the absence of an express severability clause is one of legislative intent. We have stated the rule to be that

where a statute contains an unconstitutional provision, and another which, if standing by itself, would be valid, the latter will be given effect, provided they are so clearly independent of each other that the court can say that the Legislature would have passed it if the former had been omitted. On the other hand, if they be so connected one with the other, or so dependent one upon the other, that

---

**3.** Tex.Gov't Code Ann. § 312.013 (1988) provides:

§ 312.013. **Severability of Statutes.**
(a) Unless expressly provided otherwise, if any provision of a statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given

effect without the invalid provision or application, and to this end the provisions of the statute are severable.
(b) This section does not affect the power or duty of a court to ascertain and give effect to legislative intent concerning severability of a statute.

it is apparent that the Legislature would not have passed the act, except as a whole, then the entire statute must fall. *Texas & P. Ry. Co. v. Mahaffey*, 98 Tex. 392, 395, 84 S.W. 646, 648 (1905). The stated rule, like the Government Code provision, refers only to the unconstitutionality of a particular provision, not to the whole enactment of the statute. Even applying the severability rule, the test requires that the remaining portion of the act must be "plainly severable and capable of execution in accordance with the legislative intent." *Love v. Wilcox*, 119 Tex. 256, 271, 28 S.W.2d 515, 522 (1930). The legislative records stipulated in evidence show that H.B. 2566 was a comprehensive revision of the career ladder portions of the Education Code. The differences between the various House and Senate versions of the bill included discrepancies as to when and how to phase in the changes to the various career level requirements. Effective dates of particular provisions appear as a significant legislative concern. Given the legislative intent from this legislative history, we can-not conclude the legislature would have enacted the rest of the statute if the effective date of level one changes (section 5) had not been delayed until September 1, 1990. The interconnectedness of the provisions makes it unclear whether the legislature would have enacted the bill if section 23 were left out. Accordingly, we hold that the entire bill must fail.

We reverse the judgment of the trial court. Because of potential factual questions about the amount of bond and other provisions of the temporary injunction, we decline to render judgment for the Teachers. We remand this cause to the trial court for rendition of a temporary injunction pending final disposition of the permanent injunction proceedings.