**Opinion issued December 16, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-01032-CV
_____

**CITY OF PASADENA, TEXAS, CITY OF PASADENA PLANNING COMMISSION, JEFF WAGNER, AND MELISSA TAMEZ, Appellants**

**V.**

**CAROUSEL VILLAGE CONDO'S, INC. d/b/a
VILLA ROSE SENIOR HOUSING RV PARK, Appellee**

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2023-83616**

---

## MEMORANDUM OPINION

This appeal arises from the City of Pasadena's rejection of an application for a final plat and permit to build a travel trailer park submitted by Carousel Village Condo's, Inc. ("Carousel Village"). Before it can open its travel trailer park, Carousel Village needs to have an approved site plan and obtain a certificate of

occupancy. After the City denied Carousel Village's preliminary site plans, Carousel Village applied for a final plat and permit. When the City rejected Carousel Village's application, Carousel Village petitioned for a writ of mandamus to compel the City and certain officials to approve Carousel Village's application and sought declaratory judgment and injunctive relief to prevent the City from applying the requirements of Pasadena Municipal Code Chapter 21 to Carousel Village's proposed travel trailer park. The City responded with a plea to the jurisdiction and summary judgment, which the trial court denied.

The City contends that Carousel Village's claims are not ripe and are barred by the City's governmental immunity, and that the ultra vires doctrine is inapplicable.

Because we conclude the City's governmental immunity bars Carousel Village's claims, we reverse the trial court's denial of the City's plea to the jurisdiction and dismiss this case for lack of jurisdiction.

**Background**

Pasadena ordinance requires travel trailers to be "parked for use or occupancy" only in "a duly authorized manufactured home park." PASADENA, TEX. PASADENA, TEX. CODE OF ORDINANCES ch. 21, art. III § 21-15. Authorized manufactured home parks, in turn, must satisfy certain minimum requirements. A park must be at least five acres and have no more than eight lots per gross acre. *Id.*

2

§ 21-43. Each lot must be at least 5,000 square feet with a minimum setback of 50 feet. *Id.* § 21-26. Eight percent of the park's space must be "devoted to open space for parks and recreation facilities." *Id.* § 21-45. Additionally, the park must have streets that meet minimum width requirements, paved sidewalks, and utility and drainage easements. *Id.* §§ 21-48, 21-50 to 52.

To obtain a permit to build a manufactured home park, the developer must apply to the Planning and Zoning Commission for approval of a preliminary plat. If the Commission does not approve the preliminary plat, it must provide its reasons for disapproval. *Id.* § 21-87. If the Commission disapproves the preliminary plat, the developer may either resubmit with the changes required for approval or appeal the Commission's disapproval to the City Council. *Id.* §§ 21-87 to 88.

On the other hand, if the Commission approves the preliminary plat, the developer must submit a proposed final plat together with plans and specifications prepared by a professional engineer for "construction of streets, parking areas, storm drainage, water lines, sewer lines, buildings and other facilities" required by the City's ordinances. *Id.* § 21-89. *Id.* If the Commission approves the final plat, the Department of Building Inspection may issue a permit to build the park. *Id.* § 21-91. If the Commission denies the final plat, the developer may appeal the decision to the City Council. *Id.* §§ 21-88 to 90.

In March 2022, Carousel Village first applied for a preliminary plat to develop the property into an "RV Park for Seniors" and requested a variance from the five-acre requirement because the tract was only 3.36 acres. Carousel Village did not request any other variances. The Commission did not approve this preliminary plat because it did not comply with certain requirements. The Commission noted that a portion of the 3.36 acres was still being used for a multi-family project, so Carousel Village needed to update its variance request and apply for certain other variances.

Two months later, Carousel Village submitted a revised application for preliminary plat and requested a variance from the five-acre requirement, noting the manufactured home park would be 3.24 acres. Carousel Village also sought a variance from the 5,000 square feet requirement for each lot ("second preliminary plat application"). The Commission not only denied the two requested variances, but it also gave 20 other reasons for denying the preliminary plat, including conflicts with utility easements, detention reserve, private drives, lot dimensions, and area calculations, and setback requirements.

Carousel Village appealed this denial to the City Council. The City Council upheld the Commission's decision.

In September 2022, Carousel Village submitted a third application for a preliminary plat, but the Commission refused to accept Carousel Village's application based on the City's prior denial of the variances requested by Carousel

Village. Carousel Village then appealed the Commission's non-acceptance of Carousel Village's third preliminary plat application.

Carousel Village applied for a final plat in February 2023, but the Commission refused to accept the application because the City had not approved any of Carousel Village's prior preliminary plat applications.

Carousel Village appealed the Commission's refusal to accept Carousel Village's final plat application, claiming that its final plat application was proper because its third preliminary plat application was deemed approved based on the Commmission's failure to act on it.

In August 2023, Carousel Village submitted a site plan review application, which the both the Commission and the City's Public Works Department rejected, explaining, among other things, that the City did not approve a plat, which is required before submitting a permit application. The Commission also noted that the property contained fewer than five acres and the request for variance from the five-acre requirement was not granted.

Carousel Village sought a writ of mandamus, declaratory judgment, injunctive relief, and attorney's fees based on the City's disapproval of its development plats and site plan. During litigation, Carousel Village and City Attorney Jay Dale entered into a Rule 11 agreement (the "Agreement") in which the City Attorney agreed to (1) recommend the City Council approve Carousel Village's plan to construct the

5

RV Park, including the requested variances from acreage and area requirements; (2) present the Rule 11 Agreement to the City Council within 60 days of the Agreement unless the City Attorney removed it from the meeting; and (3) arbitrate any disagreements. The Agreement states that it is subject to timely approval by City Council and void if not timely approved.

Carousel Village later supplemented its suit to include a breach-of-contract claim and related attorney's fees, claiming the Agreement was not submitted to City Council as promised. In its plea to the jurisdiction, the City argued that the suit is barred by governmental immunity, Carousel Village lacks standing, and Carousel Village's claims are not ripe. The trial court denied the City's plea to the jurisdiction.

In four issues, the City contends that Carousel Village's claims are not ripe; the Local Government Code does not waive the City's governmental immunity; the ultra vires doctrine is inapplicable; and the Declaratory Judgment Act does not waive governmental immunity for Carousel Village's as-applied challenge to Chapter 21 of the City Code.

**Standard of Review**

A plea to the jurisdiction is a procedural vehicle used to challenge a court's subject-matter jurisdiction over a claim. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of law, which we review de novo. *Suarez v. City of Tex.*

6

*City*, 465 S.W.3d 623, 632 (Tex. 2015). "In doing so, we exercise our own judgment and redetermine each legal issue, without giving deference to the lower court's decision." *City of Houston v. Houston Firefighters' Relief & Ret. Fund*, 667 S.W.3d 383, 395 (Tex. App.—Houston [1st Dist.] 2022, pet. denied).

"When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 927 (Tex. 2015). We construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent. *Id.* If the pleadings present a fact question regarding the jurisdictional issue, a court cannot sustain the plea to the jurisdiction. *Id.* But if the pleadings affirmatively negate the existence of jurisdiction, then the court may grant the plea to the jurisdiction without allowing the plaintiff the opportunity to amend. *Miranda*, 133 S.W.3d at 227.

"[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Id.* When reviewing a plea to the jurisdiction in which disputed evidence implicates both the court's subject-matter jurisdiction and the merits of the case, we consider relevant evidence submitted by the parties to determine whether a fact issue exists. *Suarez*, 465 S.W.3d at 632–33. "We take as true all evidence favorable to the nonmovant,

indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Id.* at 633. If the evidence creates a fact question regarding jurisdiction, then the plea must be denied because the fact finder must resolve the issue. *Id.* "If the evidence fails to raise a question of fact, however, the plea to the jurisdiction must be granted as a matter of law." *Id.*

## Ripeness

In its first issue, the City contends that Carousel Village's claims are not ripe. We disagree.

Ripeness is an element of subject-matter jurisdiction and thus is subject to a de novo standard of review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928–29 (Tex. 1998). "Ripeness is a jurisdictional prerequisite to suit." *Zaatari v. City of Austin*, 615 S.W.3d 172, 183 (Tex. App.—Austin 2019, pet. denied). "[A]voiding premature litigation prevents courts from 'entangling themselves in abstract disagreements over administrative policies' while at the same time serving to 'protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) (quoting *City of El Paso v. Madero Dev. & Constr. Co.*, 803 S.W.2d 396, 398–99 (Tex. App.—El Paso 1991, writ denied).

When determining whether a claim is ripe, courts must "consider whether, at the time the suit was filed, the facts were sufficiently developed so that injury has occurred or is likely to occur, rather than being contingent or remote." *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 78 (Tex. 2015) (emphasis omitted). A case is not ripe if it involves uncertain or contingent future events that may not occur as anticipated. *Id.*

A land-use regulation case is ripe when there is "a final decision regarding the application of regulations to the property at issue." *Mayhew*, 964 S.W.2d at 929. Generally, to obtain a final determination, the property owner must submit an application for the permitted use and seek a variance if the application is denied. *Commons of Lake Houston, Ltd. v. City of Houston*, 711 S.W.3d 666, 684 (Tex. 2025). But "futile variance requests or re-applications are not required." *Id.* (citing *Mayhew*, 964 S.W.2d at 929). A subsequent application or variance request is futile when the government has clarified that the owner cannot obtain approval for his desired use, that his request for a permit has been definitively rejected, or that any subsequent request would not make a difference. *Id.*

Carousel Village's claims are ripe only if the City has made a final determination, unless further variance requests and applications are futile. *See Mayhew*, 964 S.W.2d at 929. The City contends that Carousel Village's claims are not ripe because Carousel Village never satisfied any of the requirements to obtain

9

the approval of its preliminary plat. The City points out that Carousel Village's second preliminary plat application did not cure various deficiencies from the first preliminary plat application or seek variances other than the two variances from the total acreage requirement and minimum lot size. After the Commission's disapproval of Carousel Village's second preliminary plat application and the City Council's rejection of Carousel Village's appeal, the Commission rejected Carousel Village's third preliminary plat application because Carousel Village did not cure the deficiencies in its previous applications. But the record shows the City made a final determination that Carousel Village could not obtain approval for its property's desired use.

Before making its third preliminary plat application, Carousel Village requested two variances—one from the total acreage requirement of five acres and one from the minimum 5,000 square feet per lot requirement—and it appealed the Commission's refusal to grant the variances to the City Council. The City Council upheld the Commission's decision on appeal. When Carousel Village submitted its third preliminary plat application, the Commission refused to accept it for review, stating that the property did not comply with the total acreage requirement of five acres and each proposed lot did not comply with the minimum 5,000 square feet area requirement. The Commission explained that it had already denied these variances and its decision had been affirmed by City Council. Additionally, the Commission's

letter refusing to consider Carousel Village's February 2023 final plat application stated, "The Council's final decision denying the preliminary plat was filed in the City Secretary's office on August 2, 2022."

As shown by the Commission's definitive statement and express reasons for refusing to accept Carousel Village's third preliminary plat application, the City made a final determination that the variances Carousel Village requested would not be given, and the City would not consider future applications, even if the other deficiencies were cured. Thus, we hold that Carousel Village's claims are ripe.

We overrule the City's first issue.

## Governmental Immunity

Next, we consider whether the City may invoke governmental immunity to bar Carousel Village's claims.

Governmental immunity implicates a trial court's jurisdiction and derives from the State's sovereign immunity. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Governmental immunity precludes suit and legal liability against the State's political subdivisions, including cities, when performing governmental functions. *City of Houston*, 667 S.W.3d at 395. Unless the State has consented to suit through legislative waiver of governmental immunity, such immunity deprives courts of subject matter jurisdiction. *Fallon v. Univ. of Tex. MD Anderson Cancer Ctr.*, 586 S.W.3d 37, 56 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

11

"A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "That burden encompasses the burden of establishing a waiver of sovereign immunity in suits against the government." *Id.* "Because a governmental unit is protected from suit by governmental immunity, pleadings in a suit against a governmental unit must affirmatively demonstrate, either by reference to a statute or express legislative permission, that the Legislature consented to the suit." *City of Houston v. Swinerton Builders, Inc.*, 233 S.W.3d 4, 10 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

**1. The Uniform Declaratory Judgments Act does not waive the City's governmental immunity.**

Carousel Village seeks declarations under the Texas Uniform Declaratory Judgments Act ("UDJA") that:

- the City's governmental immunity was expressly waived under Texas Local Government Code sections 212.010(e) and 245.006(b);

- its claims were ripe;

- the City's Manufactured Home Park Ordinance was expressly prohibited under Local Government Code section 214.906, and thus the Commission and Planning Director Melissa Tamez ("Director Tamez") acted ultra vires in regulating the Property as a Manufactured Home Park because the definition of "manufactured home" under Texas Occupations Code section 1201.004 excludes "recreational vehicles"; and

12

- its February 2023 plat application and August 2023 site plan were approved as a matter of law.

To support its challenges to the denial of its plat application and variances, Carousel Village relied on Local Government Code section 214.906, which prohibits municipalities from regulating a tract or parcel of land as a manufactured home community, park, or subdivision unless it contains at least four spaces for manufactured homes. TEX. LOC. GOV'T CODE § 214.906. Carousel Village challenges the City's regulation of its RV park because it will not have any spaces for manufactured homes. The Texas Supreme Court has clarified that the UDJA does not waive immunity when a plaintiff seeks a declaration of rights or challenges a governmental entity's actions under a statute or ordinance. *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011).

**2. The provisions of the Local Government Code invoked by Carousel Village do not waive the City's governmental immunity here.**

Carousel Village argues that the trial court had jurisdiction over its claims because they fall within the statutory waivers of immunity in Local Government Code sections 212.010(e) and 245.006(b). We consider these jurisdictional theories in turn.

Local Government Code section 212.010(e) permits the owner of the tract to bring an action for a writ of mandamus if a municipal authority responsible for approving plats refuses to approve a plat that meets the applicable statutory

requirements. TEX. LOC. GOV'T CODE § 212.010(e). The City contends that section 212.010(e) does not waive the City's immunity here because it did not go into effect until September 1, 2023, after Carousel Village filed its plat application. Tex Sess. Law Serv. Ch. 1125 (H.B. 3699), § 12 (codified as amended at TEX. LOC. GOV'T CODE § 212.010(e)). The enrolled bill specifies,

> The changes in law made by this Act apply only to an application submitted on or after the effective date of this Act. An application submitted before the effective date of this Act is governed by the law applicable to the application immediately before the effective date of this Act, and that law is continued in effect for that purpose.

*Id.*; *see* TEX. GOV'T CODE § 311.029. Carousel Village asserts that the statute is unclear about which "application" is intended—the plat application or the mandamus application. Carousel Village contends that we should interpret "application" to mean mandamus application because Carousel Village filed its action for writ of mandamus after September 1, 2023.

"Under the enrolled bill rule, the text of the enrolled statute as authenticated by the presiding officers of each house, signed by the governor (or certified passed over gubernatorial veto), and deposited in the secretary of state's office, is precisely the same as and a 'conclusive' record of the statute that was enacted by the legislators." *XTO Energy, Inc. v. Houston Pipe Line Co., LP*, 705 S.W.3d 239, 241 (Tex. Bus. Ct. (11th Div.) 2024) (quoting *Ass'n of Tex. Pro. Educators v. Kirby*, 788 S.W.2d 827, 829 (Tex. 1990)). Thus, we presume the enrolled bill accurately

14

expresses the Legislature's intent. *Id.* at 241; *see* TEX. GOV'T CODE § 311.029 (language of enrolled bill version controls over any subsequent printing of statute).

"[W]e construe the statute by applying the terms' common, ordinary meaning unless the text supplies a different meaning or the common meaning leads to absurd results." *Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 131 (Tex. 2018). We must read the words of the statute in context, and not in isolation, construing the statute as a whole. *Malouf v. State ex rel. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024).

Section 212.010 refers to a plat application submitted to the municipality, not to an action filed after a municipality denies the application. *See* TEX. LOC. GOV'T CODE § 212.010. The Legislature referred to an action or lawsuit in a district court as an "action," not an "application." *See id.* ch. 212. "We must assume the Legislature used a different word because it intended a different meaning." *State ex rel. Best v. Harper*, 562 S.W.3d 1, 12 (Tex. 2018).

In contrast, the Legislature consistently used "application" throughout the statute to refer to a plat application. *See, e.g.*, TEX. LOC. GOV'T CODE § 212.008 (titled "Application for Approval" and referring to plat application); *Id.* § 212.0081 (using "application" to refer to plat application). Likewise, "applicant" is used throughout the chapter to refer to the party requesting approval of a plat, not to a party filing a lawsuit. *See, e.g., id.* §§ 212.009(d), 212.0091(a), 212.0095(a).

15

Consistent with this usage, we understand "application" in the statute to mean "plat application."

Carousel Village also asserts that Local Government Code section 245.006 waives the City's governmental immunity in this suit. The City responds that it does not. We agree with the City. Chapter 245 requires local governmental units to determine a permit application based on requirements in effect at the time it is submitted, not on requirements adopted after it is filed. TEX. LOC. GOV'T CODE § 245.002. Section 245.006 waives governmental immunity solely for lawsuits seeking to enforce Chapter 245. *Id.* § 245.006. Carousel Village did not bring suit under Chapter 245, and nothing in Carousel Village's live pleading suggests that the City considered Carousel Village's plat application based on any requirements that took effect after Carousel Village filed its original application. *See id.* § 245.002; *City of Dickinson v. Stefan*, 611 S.W.3d 654, 662 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

### 3. The limited waiver for certain breach-of-contract claims does not apply.

In the Rule 11 Agreement between the City Attorney and Carousel Village, the City Attorney agreed to (1) recommend that the City Council approve Carousel Village's plat application, including variances for acreage and area requirements; and (2) present the Agreement to the City Council within 60 days. Carousel Village brought a breach-of-contract action based on the Agreement and complains that the

Mayor and City Attorney failed to comply with the Agreement because they never submitted it to the City Council.

The Texas Supreme Court has rejected the notion that a governmental entity with authority to enter into contracts, or an agent acting on its behalf, can contractually waive immunity from suit. *See Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 858 (Tex. 2002). Thus, the City did not waive immunity to suit by the City Attorney executing the Agreement. *See id.*

Carousel Village next asserts that the Legislature's limited waiver of immunity for certain breach-of-contract actions under Local Government Code section 271.151 applies here. We disagree.

Section 271.151 waives immunity from suit for a breach of contract based on an agreement providing goods or services to the local governmental entity that is properly executed on behalf of the governmental entity. TEX. LOCAL GOV'T CODE § 271.151. Carousel Village argues that it is entitled to sue the City for breach of contract because the City Attorney executed a Rule 11 Agreement and agreed to submit the Agreement to the City Council, and the Mayor and City Attorney failed to do so. But the waiver of immunity under section 271.151 applies only to contracts "properly executed." Here, the Agreement was not "properly executed" by the City because its charter gives the City Council the exclusive authority to bind the City to a contract. *See* PASADENA CITY CHARTER art. III, §§ 1, 9; *see also City of Benito v.*

17

*Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003) ("Cities can express and bind themselves only by way of a duly assembled [city council] meeting."); *El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 531–32 (Tex. 2020) (holding that contract was not "properly executed" on behalf of board because district did not approve it). Accordingly, Local Government Code section 271.151 does not waive governmental immunity from Carousel Village's breach-of-contract claim.

### 4. The ultra vires exception to governmental immunity does not apply.

Carousel Village argues that the ultra vires exception to governmental immunity applies because the City violated Local Government Code section 214.906 by enforcing its Manufactured Home Park Ordinance. But, as the City correctly points out, the ultra vires doctrine applies only to government officials, not governmental entities. *See Sefzik*, 355 S.W.3d at 621 (explaining that proper defendant in ultra vires action is government official "whose acts or omissions allegedly trampled on the plaintiff's rights"); *Heinrich*, 284 S.W.3d at 373.

Carousel Village also named the Commission, Mayor Wagner, and Director Tamez as Respondents/Defendants in this suit. Carousel Village seeks a writ of mandamus to require the Commission and Director Tamez to: (1) issue approval documentation for its February 2023 final plat application and August 2023 site plan; and (2) execute and file its plat with the Harris County Clerk. Additionally, Carousel

18

Village seeks a writ of mandamus to require the Mayor and the City Attorney to submit the Agreement to City Council with a recommendation for its approval.

To the extent Carousel Village seeks to bring ultra vires claims against the Commission itself, the Commission retains governmental immunity. *See Heinrich*, 284 S.W.3d at 373 (holding that ultra vires claims must be brought against officials in their official capacity, not the entity); *Byrdson Servs., LLC v. S.E. Tex. Reg'l Planning Comm'n*, 516 S.W.3d 483, 485 (Tex. 2016) (describing the Planning Commission as an entity and political subdivision of the State). To the extent Carousel Village seeks a writ of mandamus against the City Attorney, Carousel Village did not name him as a Respondent/Defendant here. *See* TEX. R. APP. P. 52.3; TEX. R. CIV. P. 39. What remains are Carousel Village's claims against the Director and the Mayor in their official capacities.

"Mandamus seeking to compel action by a public official 'falls within the *ultra vires* rationale.'" *Schroeder v. Escalera Ranch Owners' Ass'n*, 646 S.W.3d 329, 332 (Tex. 2022) (quoting *Sefzik*, 355 S.W.3d at 621 n. 2). The ultra vires exception to governmental immunity provides that claims may be brought against a government official for "nondiscretionary acts unauthorized by law." *Sefzik*, 355 S.W.3d at 621. Under the ultra vires exception to governmental immunity, "a suit must not complain of a government officer's exercise of discretion, but rather must

19

allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372.

When "[a]n *ultra vires* claim is based on actions taken 'without legal authority,' the claim has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *Hall v. McRaven*, 508 S.W.3d 232, 239 (Tex. 2017); *Gulfton Area Mun. Mgmt. Dist. v. APT Villa Contento LLC*, No. 01-23-00703-CV, 2025 WL 1657764, at *4 (Tex. App.—Houston [1st Dist.] June 12, 2025, no pet.) (mem. op.). "[A] government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires*, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Schroeder*, 646 S.W.3d at 332. "If the challenged actions were not truly outside the officer's authority or in conflict with the law, then the plaintiff has not stated a valid ultra vires claim and governmental immunity will bar the suit." *Id.*

The Supreme Court of Texas has recognized that "[p]lat approval is a discretionary function that only a governmental unit can perform." *Id.* "[O]nce the relevant governmental unit determines that a plat conforms to applicable regulations, it has a ministerial duty to approve that plat." *Id.*; *see* TEX. LOC. GOV'T CODE §§ 212.005, 212.010. The determination of a plat's conformity "is a discretionary one that necessarily involves 'interpreting and construing applicable ordinances.'"

20

*Id.* at 335 (citing *City of Round Rock v. Smith*, 687 S.W.2d 300, 303 (Tex. 1985)). Here, the Manufactured Home Park ordinance grants the Commission the authority to approve a plat. *See* PASADENA, TEX. CODE OF ORDINANCES ch. 21, art. IV §§ 21-87, 21-90. The Commission disapproved the plat, determining it did not conform to the City's ordinances. The Mayor and Director, however, lack authority to approve Carousel Village's plat and site plan because that authority belongs to the Commission. *See id.* Further, because the plat did not conform to the applicable regulations, a ministerial duty never arose.

Similarly, the Mayor had no ministerial duty to present the Rule 11 Agreement to City Council. The Agreement states that the "City Attorney will present this agreement for consideration by the City Council at the next regularly scheduled meeting or within 60 days . . . unless in the opinion of the City Attorney it needs to be removed from the meeting." The Agreement does not mention any duty on behalf of the Mayor. Thus, no ultra vires exception to governmental immunity applies here.

### 5. Carousel Village did not preserve its constitutional challenge.

For the first time on appeal, Carousel Village makes a constitutional challenge to the City's manufactured park ordinance. In Carousel Village's live petition, Carousel Village does not challenge the ordinance's constitutional validity but asks the court to enforce a statute and determine its obligations on the City. Accordingly, we do not consider Carousel's constitutional argument. *See* TEX. R. APP. 33.1; *Tex.*

*Dep't of Protective & Regul. Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001) ("[A]s a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal.").

## Conclusion

We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Carousel Village's claims for lack of jurisdiction. All pending motions are dismissed as moot.


Clint Morgan
Justice

Panel consists of Chief Justice Adams and Justices Morgan and Dokupil.